YALE DEVELOPMENT COMPANY v. CITY OF PORTAGE.

1. ZONING—MUNICIPAL CORPORATIONS—ORDINANCE—NONCONFORMING USE NEAR PROPERTY.

The rezoning of corner lot zoned residential, so as to permit commercial use of the lot for a gasoline service station, would be a flagrant example of spot zoning where almost all of the surrounding land except for a few small businesses is used for residential purposes, and a zoning ordinance making it residential is not unreasonable even though some nearby property is used commercially.

2. SAME—TRAFFIC—RESIDENTIAL NEIGHBORHOOD.

Heavy traffic conditions were not a factor in causing property to be unsuitable for residential purposes where the entire surrounding area was a residential neighborhood.

3. SAME—ORDINANCE—REZONING—VALUE.

The fact that a change in zoning might result in enhanced value of property to the profit of landowners does not mean that a zoning ordinance is confiscatory, particularly when it is the

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning § 39.
[2] 58 Am Jur, Zoning §§ 33, 36, 142.
[3, 4] 58 Am Jur, Zoning §§ 28, 140.
[5] 58 Am Jur, Zoning § 16.
[6] 58 Am Jur, Zoning § 27.
[7] 5 Am Jur 2d, Appeal and Error § 1009.

zoning ordinance itself, unchanged except as to this 1 parcel, that would create the situation resulting in enhancement of the value of the property.

4. SAME—REZONING—DISPARITY IN VALUE.
   Substantial disparity in value of land, depending on what use it is zoned for, does not alone prove confiscation by the zoning ordinance.

5. SAME—ORDINANCE—PRESUMPTIONS.
   A municipal zoning ordinance is presumed valid.

6. SAME—ORDINANCE—PLAN.
   City that followed zoning plan and ordinance adopted by the township which later became the city complied with statute requiring that zoning regulations be made in accordance with a plan, for the source of the plan is immaterial if in fact there was a plan (CL 1948, § 125.581).

7. COSTS—ZONING ORDINANCE—PUBLIC QUESTION.
   No costs are allowed in action to declare zoning ordinance void as it applied to plaintiff's property, a public question being involved.

Appeal from Kalamazoo; Sweet (Lucien S.), J. Submitted Division 3 December 5, 1967, at Grand Rapids. (Docket No. 3,115.) Decided April 3, 1968.

Complaint by Yale Development Company, an Illinois corporation, and Jacob H. and Caroline M. Brondyke against the City of Portage to have zoning ordinance as it applied to plaintiffs' property declared void. Action dismissed. Plaintiffs appeal. Affirmed.

*Bauckham & Reed,* for plaintiffs.

*Vlachos & Carey,* for defendant.

BURNS, J. Plaintiffs appeal from a circuit court order dismissing their cause of action. Plaintiffs' complaint asked that the defendant's one-family resi-

dential zoning ordinance as it applies to their property, which is situated on the northeast corner of the Milham road and Oakland drive intersection in the city of Portage, be declared void. Both Milham and Oakland are 2-lane roads which have been widened to 3 or 4 lanes at the intersection.

Plaintiffs Jacob H. Brondyke and Caroline M. Brondyke purchased the land for $1,200 in 1952 and in 1964 granted plaintiff Yale Development Company an option to purchase the property for $30,000. Yale exercised this option in 1965 and then granted an oil company an option to purchase for $65,000. Both of the aforementioned options were conditioned upon a zoning change which would permit the land to be used for gasoline service station purposes.

Plaintiffs raise the following questions on appeal:

"1. Is the present single-family residential zoning of the city of Portage unreasonable, arbitrary, discriminatory and confiscatory as applied to plaintiffs-appellants' land?

"2. Are defendant-appellee's present zoning ordinance regulations as applied to plaintiffs-appellants' land based upon a comprehensive plan required by CL 1948, § 125.58 (Stat Ann 1958 Rev § 5.2931)?"

In support of plaintiffs' argument regarding the first issue, they emphasize the following proofs:

1. Inconsistent uses near plaintiffs' property.

2. A relatively high volume of traffic on both of the intersecting roads (6,934 to 10,000 vehicles daily).

3. Disparity in value ($2,900 to $6,500 evaluation for residential usage as compared to a $65,000 evaluation for commercial usage).

4. Commercial zoning for other major intersections within the city.

5. Difficulty in obtaining financing for residential purposes.

6. Lack of demand for residential building pur-
poses.

We will discuss only the first 3 factors. The
fourth point as it relates to the facts of this case is
without merit. The last 2 factors are considered
in conjunction with the first and third points.

According to plaintiffs' witnesses 95% of the area
improved within a 1/2-mile radius is being used
residentially. Conforming residences abut both
sides of the subject property. The only improved
corner of the intersection is a residential site.

The few exceptions to this predominantly resi-
dential area primarily consist of concerns which are
not what we would consider high volume businesses
and which in appearance could pass for, and in some
instances also serve as, residences. About 900 feet
east of the subject property is a small vacant com-
mercial block building, and next to it is a trailer
sales building—the only real substantial variance to
an otherwise residential area. To permit the con-
struction of a service station on plaintiffs' property
would be a flagrant example of "spot zoning." See
*Penning* v. *Owens* (1954), 340 Mich 355, 367, and
*Trenton Development Company* v. *Village of Tren-
ton* (1956), 345 Mich 353. One of the plaintiffs' own
witnesses, a former planning director for Kalamazoo
county, testified to this effect. The alleged incon-
sistencies do not persuade us that the ordinance is
unreasonable.

There have been cases that considered heavy
traffic conditions as a factor in determining that
property was unsuitable for residential purposes.
The facts in the present case prove to the contrary
as the entire surrounding area has grown as a resi-
dential neighborhood.

The last point meriting comment is the disparity
in value. Value is a flexible concept and is depend-

ent upon many variables. The trial court pointedly observed one such variable—a potential monopolistic condition at the intersection in question—and concluded:

"The mere fact that a change in the zoning might result in great enhancement of the value of the subject property to the profit of the plaintiffs in this case does not mean that the zoning ordinance is confiscatory, particularly when we consider that it is the zoning ordinance itself, unchanged except as to this one parcel, that would create the situation resulting in the enhancement of the value of the property."

It is not difficult to envision a given spread in use valuation as constituting confiscation in one case and not in another depending upon the circumstances. Substantial disparity in value alone does not prove confiscation. *Muffeny* v. *City of Southfield* (1967), 6 Mich App 19, 23.

In summary, plaintiffs' briefs and a thorough review of the record and transcript fail to convince us that the existing zoning ordinance is unreasonable, arbitrary, discriminatory and confiscatory as applied to plaintiffs' land. Nothing more than a debatable question was presented to the trial court. See *Brae Burn, Inc.*, v. *City of Bloomfield Hills* (1957), 350 Mich 425. Plaintiffs failed to overcome the presumption of validity which is attached to zoning ordinances. *Austin* v. *Older* (1938), 283 Mich 667; *Paka Corporation* v. *City of Jackson* (1961), 364 Mich 122.

Plaintiffs' second claim of error is that when the city adopted its detailed zoning ordinance, defendant failed to comply with the following portion of CL 1948, § 125.581 (Stat Ann 1958 Rev § 5.2931):

"[Zoning] regulations shall be made in accordance with a *plan* designed to lessen congestion on

the public streets, to promote public health, safety and general welfare." (Emphasis supplied.)

The city of Portage contracted for the services of a city planning consulting firm, but the firm had not completed its proposals prior to the enactment of the ordinance in question. The trial judge found that the "city apparently has temporarily followed the plan and the ordinance which had been previously adopted by the township of Portage, that later became the city of Portage."

Even if defendant's ordinance was completely plagiarized from the township's plan, the ordinance would still stand unrebutted as an expression of legislative intent which we do not ordinarily question. The *source* of the plan mentioned in the statute above must be immaterial to this Court once it appears that there was in fact a plan upon which to premise legislative judgment.

Affirmed. No costs, a public question being involved.

HOLBROOK, P. J., and J. H. GILLIS, J., concurred.