## HOUSE v. CITY OF BLOOMFIELD HILLS

1. Zoning—Ordinance—Reasonableness.

    The reasonableness of a zoning ordinance must be determined upon the facts of each case.

2. Appeal and Error—Findings of Fact—Equity—Trial De Novo.

    The Court of Appeals hears equity cases *de novo* on the record, but gives considerable weight to the trial judge's findings of fact.

3. Zoning—Ordinance—Constitutional Law—Due Process—Reasonableness of Ordinance.

    Trial court finding that a zoning ordinance which restricts use of property along an eight lane, 200 foot wide road which carries heavy traffic to single family residences is unreasonable and therefore unconstitutional because it represents a taking of property without due process of law *held,* proper.

5. Costs—Zoning—Neither Party Prevailing in Full.

    No costs are awarded on appeal in case of a city zoning ordinance where neither party prevails in full.

Appeal from Oakland, Arthur E. Moore, J. Submitted Division 2 April 16, 1969, at Lansing. (Docket No. 5,325.) Decided June 26, 1969. Re-

References for Points in Headnotes

[1] 58 Am Jur, Zoning § 21.
[2] 5 Am Jur 2d, Appeal and Error §§ 703, 868.
[3] 5 Am Jur 2d, Appeal and Error §§ 880, 884.
[4] 58 Am Jur, Zoning §§ 21, 22.
[5] 5 Am Jur 2d, Appeal and Error §§ 1009, 1014, 1016, 1017.

hearing denied August 11, 1969.   Application for leave to appeal filed September 2, 1969.

Complaint by Hughina F. House and Suzanne House Phelp against the city of Bloomfield Hills, a Michigan municipal corporation, for a declaration that defendant's zoning ordinance No. 93 and amendments thereto are unconstitutional and void. Judgment for plaintiffs as to a portion of the property and judgment for defendant as to the remainder of the property.   Defendant appeals and plaintiffs cross-appeal.   Affirmed.

*Hampton & Hampton* for plaintiffs.

*Joseph T. Brennan,* for defendant.

Before:  McGregor, P. J., and R. B. Burns and Danhof, JJ.

Danhof, J.   This is another legal milestone in the on-going zoning disputes between Woodward Avenue property owners and the city of Bloomfield Hills.   See *Scholnick* v. *City of Bloomfield Hills* (1957), 350 Mich 187 and *Brae Burn, Inc.* v. *City of Bloomfield Hills* (1957), 350 Mich 425.   In the latter case the Court said:

"We have stressed, heretofore, in these zoning cases, the principle that each case must be judged on its own facts.   Some confusion may have arisen from its frequent repetition.   The statement is merely a truism in the law, applicable to all cases, from arbitration to zoning.   It solves nothing. Most assuredly it does not imply that each zoning case stands alone, unrelated to and untouched by the others.   To put it in another way, we have no 'Woodward avenue rule,' no 'traffic' rule as such,

no 'diminution in value' rule. All these are merely factors to be considered, pieces of the mosaic."

Plaintiffs allege that defendant's zoning ordinance restricting plaintiffs' property to single family residential use is unconstitutional because of unreasonableness and sought equitable relief via an injunction. This Court hears such a case *de novo* on the record, but gives considerable weight to the trial judge's findings of fact. *Bugariu* v. *Bugariu* (1967), 8 Mich App 673, citing *Christine Building Company* v. *City of Troy* (1962), 367 Mich 508.

The *Scholnick Case, supra,* was a suit to enjoin the enforcement of a zoning ordinance. Its dismissal by the trial court was affirmed on appeal. The *Brae Burn Case, supra,* was a mandamus action to enforce issuance of a building permit and the issuance of the writ by the trial court was reversed on appeal.

In the recent case of *Biske* v. *City of Troy* (1969), 381 Mich 611, decided April 9, 1969 while the appeal of the instant case was pending, the Supreme Court distinguished the *Brae Burn Case,* on the basis that it was a mandamus action, whereas the equitable features of the zoning case in question were of importance in conjunction with the monotonously repeated precepts that

"in determining the reasonableness of a zoning ordinance each case must be determined upon its own facts"

and

"that considerable weight is given to the findings of trial judges upon review of zoning cases presenting equitable issues."

The Supreme Court then reversed division 2 of this Court and affirmed the judgment entered in the circuit court adopting as their own the trial judge's opinion. The Supreme Court's opinion reads in part (p 620):

"We begin a discussion of the legal aspects of this case with the recital of 3 fundamental propositions: (1) each zoning case is determined on the basis of the facts and circumstances peculiar to it; (2) to be valid a zoning ordinance must bear a direct and substantial relation to the preservation of public health, morals, safety and general welfare; and (3) that the plaintiffs have the burden of establishing affirmatively the lack of such relationship."

Applying these fundamental propositions to this case, we find that regarding the first one the facts have been well-stated in the trial judge's opinion and we quote therefrom:

"Plaintiffs' property is located at the southwest corner of Woodward Avenue and Lone Pine Road. It has 3.1 acres of ground. A large 14 room, dilapidated house built in 1913 faces Woodward Avenue about 50 feet from the right-of-way. A garage building with living quarters is at the rear.

"The defendant City of Bloomfield Hills is a Home Rule city located in Oakland County, Michigan, comprising some 5 square miles of area, having a population of about 3,000 persons. Through the years it has developed as a city of large and expensive single family residential homes on large lots. It has little or no business properties or business zoning, except at and near Bloomfield Center, namely, the area adjacent to the intersection of Long Lake Road and Woodward Avenue.

"Woodward Avenue frontage throughout the city is restrictively zoned to a single family residential use, except for some multiple family zoning, some

institutional zoning and the Bloomfield Center business area.

"Woodward Avenue runs in a northerly and southerly direction throughout the city. It is an eight lane, 200 foot highway. Lone Pine Road is a two lane highway, beginning at Woodward and leading westerly through and beyond the so-called Cranbrook Institution properties.

"Plaintiffs' property is presently used under right of non-conforming use as four residential areas or apartments. Concededly it is in very dilapidated and run-down condition. Plaintiffs' property is zoned as A–3–1 classification which permits only one family dwelling per acre. The property has five sides and is adjacent or across from lots zoned single family residential to the east and south. Property on the west and to the north across Lone Pine Road is all also zoned R–3–1 residential. The property to the north is also a non-conforming multiple residence use. Plaintiffs' property has 340.5 feet on Lone Pine Road and 249 and 97/100ths feet on Woodward Avenue.

"Under the. zoning ordinance, this lot could be divided so as to constitute three single family residential sites, all facing on Lone Pine Road, or in the case of the easterly parcel, it could face either Lone Pine Road or Woodward Avenue. If so divided, the easterly parcel would then have the present house located thereon and the westerly parcel would then have the garage located thereon.

"The Cranbrook property at the northwest corner of Lone Pine Road is permitted six non-conforming apartments, four in a main building and two in a building at the rear. This building was formerly a large tea house or restaurant.

"The east side of Woodward Avenue across from plaintiffs' property is zoned solely for A–3–1 single family residential use for half a mile or more in either direction north or south. No buildings are located thereon except the rundown, old, dilapidated

house.  This is known as the 'Benedict farm property.'

"Witnesses describe traffic on Woodward Avenue as eight lanes of very heavy traffic and the traffic on Lone Pine Road as heavy.  The Court has not been aided by traffic counts, but the heavy volume of traffic is common knowledge.  There is a flashing yellow light at the intersection of Lone Pine Road and Woodward Avenue.

"Lone Pine Road, west of plaintiffs' property, is developed with single family residences ranging in value from $65,000 and upwards and extending half a mile west to Christ Church Cranbrook and the other Cranbrook institutions.  Witnesses testified that Lone Pine Road is a very desirable residential address for which there is demand and that there are only three vacant residential parcels on Lone Pine Road.

"Historically, Woodward Avenue was a two lane highway in 1913, and the Grand Trunk right-of-way and electric line right-of-way were then on the east side thereof.  Subsequently, in 1930 it was widened to 200 feet and has 8 lanes of traffic pavement with a median separating north and south bound traffic.  Only eight single family buildings were ever built fronting on Woodward Avenue.  Most were constructed and located thereon many years ago before the widening.  Some of them are now used for institutional buildings.  Most of Woodward frontage still remains vacant.  It has long been dormant and unused except for churches and two mansions converted to rest homes, and three old houses.

"Going south on the west side and the same side as plaintiffs' property, Woodward Avenue is zoned and has buildings as follows:

"Next, south of plaintiffs' property is Lot 39 Assessor's Plat with 101 feet frontage on Woodward and with a small, aged residence thereon.

"Next, south and to the southerly city limits are acreage parcels having a total of about 3300 feet, all zoned 'I-1 Institutional District' on which are

first the Masonic Temple and parking and grounds; then next the Church of the Latter Day Saints (one of its members has presidential asperations [sic] I hear), and then lastly, the building and spacious grounds of the Catholic Layman's Retreat.

"Going north from plaintiffs' property and on the same and west side of Woodward Avenue are 500 feet of non-conforming multiple residential Cranbrook property zoned R–3–1 residential, but having six living apartments as mentioned before.

"Then 392 feet frontage zoned institutional with the Unitarian Church and parking located thereon and with entrance also on Lone Pine Road as well as from Woodward.

"Then next north 4300 feet zoned A–3–1 Residential single family and vacant except for three older houses predating zoning.

"Then next north, 1120 feet zoned I–1 Institutional district and with only a large old mansion house now reconverted and used for care of the aged thereon.

"Then the business district of Bloomfield Center with a motel, restaurants, a gas station and offices.

"Across the street from plaintiffs' property on the east side of Woodward is farm land and an old, dilapidated farm house mentioned above. This property is zoned A–3–1 to the southerly city limits being the entire district south thereof; namely for about 2,050 feet, all of which is vacant land.

"On the east side going north for 4,250 feet, the property is zoned Single Family A–3–1 Residential, and is all vacant.

"Next north, and for about 2200 feet, Woodward frontage is more recently zoned Multiple Family Dwelling permitting four families per acre. This is well built up and further multiple dwelling buildings are under construction.

"Next north, is the Braeburn property—
(see 350 Mich 425),
and then 1100 feet of vacant institutional zoning

and then the business properties of Bloomfield Center."

The second and third propositions quoted from *Biske, supra,* are answered by the learned trial judge's findings of fact and conclusions. Specifically, he wrote:

"Thus, the purpose, scope and limitations of zoning are delineated in the enabling statute and must be followed. It provides as follows:

" 'Such regulations shall be made in accordance with a plan designed to *lessen congestion on* the public *streets,* to *promote public health, safety and general welfare,* and shall be made with reasonable consideration, among other things to the *character of the district,* its *peculiar suitability* for particular uses, the *conservation of property values* and the *general trend* and *character of building and population development.'** (Emphasis supplied by Court.)

"The present zoning of Woodward Avenue ignores the purposes, scope and limitations stated in this statute. It bears no connection with the police powers, or traffic congestion; and fails entirely to give any 'reasonable consideration' to the 'character of the district,' 'suitability for uses', 'conservation of property values' or 'trend of building and population development'."

As said before, this Court gives great weight to the trial judge's opinion since he had the opportunity to see and hear all the witnesses. Additionally, the following quote from the *Biske Case* is pertinent:

"Meanwhile the hapless property owner waits, pays taxes and hopes that either the anticipated development will come shortly or that the zoning authority will release to some extent its griphold

---

* CL 1948, § 125.582 (Stat Ann 1969 Rev § 5.2932)—REPORTER.

of his property right. What was written for the Court by Justice DETHMERS, in *Gust* v. *Township of Canton,* 342 Mich 436, 442 comes to mind here:

" 'The extent of the owner's right to the free use of his property in the manner deemed best by him is not to be determined by such speculative standards. The test of validity is not whether the prohibition may at some time in the future bear a real and substantial relationship to the public health, safety, morals or general welfare, but whether it does so now.' "

Essentially, defendant has raised two issues on appeal. (1) Did the trial court err in basing its decision on the testimony of one expert witness when five testified; and (2) were the factual and legal conclusions of the trial court supported by the evidence? This Court finds that the trial judge acted within his discretion in giving full and controlling credence to one of several expert witnesses, and observes that defendant cited no cases holding to the contrary.

With regard to defendant's second question, this Court finds ample evidence in the record to support the trial court's holding that the zoning ordinance is unconstitutional because it is unreasonable when applied to the 2.1 easterly acres of plaintiffs' property, but valid as to the westerly 1 acre.

We have considered appellees' cross-appeal but are not persuaded by it.

Affirmed, no costs, neither party prevailing in full.

All concurred.