DRETTMAN v MACOMB TOWNSHIP

1. ZONING—ORDINANCES—VALIDITY.

There are three fundamental propositions involved in zoning cases: (1) each case is determined on the basis of the facts and circumstances peculiar to it; (2) to be valid the zoning ordinance must bear a direct and substantial relation to the preservation of public health, morals, safety, and general welfare; (3) the plaintiffs have the burden of establishing affirmatively the lack of such relationship.

2. ZONING—ORDINANCES—CONSTITUTIONALITY—BURDEN OF PROOF.

Plaintiffs must bear the burden of proof in attacking the constitutionality of a zoning ordinance.

3. ZONING—ORDINANCES—VALIDITY—REASONABLENESS—MOBILE HOMES.

A township's refusal to rezone plaintiffs' property to permit development of a mobile home park was reasonable and the zoning ordinance at issue was not unconstitutional as applied to plaintiffs' property and, the township did not act in an arbitrary and capricious manner with respect to plaintiff property where the township was legitimately concerned about the problems of traffic, living unit per acre density, and the apparent inconsistency of mobile home parks with the proposed development of the township, and where the zoning ordinance did not totally exclude mobile homes.

Appeal from Macomb, Hunter D. Stair, J. Submitted Division 2 March 12, 1974, at Lansing. (Docket No. 16389.) Decided April 30, 1974. Leave to appeal denied, 392 Mich 775.

Complaint by Henry Drettman and Margaret

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Zoning § 14 et seq.
[3] 58 Am Jur, Zoning § 63.

Use of trailer or similar structure for residence purposes as within limitation of restrictive covenant, zoning provision, or building regulation. 96 ALR2d 232.

Drettman against Macomb Township to have the township's zoning ordinance declared invalid as it applied to plaintiffs' property. Complaint dismissed. Plaintiffs appeal. Affirmed.

*Coburn, Liedel & Cannon,* for plaintiffs.

*Dank, Peterson & Hay, P. C.,* for defendants.

Before: HOLBROOK, P. J., and ALLEN and VAN VALKENBURG,* JJ.

ALLEN, J. Plaintiffs are the owners of approximately 87.1 acres of vacant land in Macomb Township. It has frontage along its southern boundary on Hall Road, and is bounded on the east by Card Road. To the north, said property is bounded by a farm, and approximately 123 acres of vacant land, zoned R-3 (mobile home park), bounds plaintiffs' property on the west. Plaintiffs purchased said property on land contract on October 21, 1968. They paid $2,000 an acre, and at that time the property was zoned AG (agricultural).

Plaintiffs are engaged in the business of manufacturing modular and mobile homes in Marlette, Michigan. As well as purchasing the above property, they purchased a nearby parcel known as the Gettgin or Gettin (correct spelling unknown) farm. That parcel was of course zoned AG. In February of 1970, plaintiffs were successful in having defendant township rezone that parcel to R-3 (mobile home district). However, on June 9, 1970, the voters of defendant township, pursuant to MCLA 125.282; MSA 5.2963(12), voted to reject this change in the zoning ordinance and the above parcel was returned to AG.

_____

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

In April of 1970, plaintiffs applied to the township planning commission for a rezoning of the parcel at issue in accordance with the provisions of Macomb Township ordinance number 10, which had been made effective on July 8, 1959. Plaintiffs desired to have the parcel at issue rezoned from AG to R-3.

Plaintiffs, by their son Henry Drettman, appeared at a public hearing before the township planning commission in June of 1970. The planning commission denied plaintiffs' request to rezone the property. Henry Drettman subsequently appeared at a public hearing held before the Macomb Township Board on July 8, 1970. Plaintiffs' request was denied by the township board. September 14, 1970, plaintiff filed the instant suit against the defendant township. During the course of the instant litigation, the defendant township rezoned the parcel at issue from AG to R-2 (multiple residential district). A neighboring parcel was zoned C-3 (local commercial district).

Both before our Court and the trial court, plaintiffs have argued that defendant's zoning ordinance is unconstitutional as applied to the instant factual situation. Contrary to the plaintiffs' assertions, the trial court felt that the plaintiffs had the burden to prove the invalidity of defendant's ordinance in its application to plaintiffs' property. The trial court felt that plaintiffs had failed to meet their burden, and on January 30, 1973, judgment was entered dismissing plaintiffs' complaint. From said judgment, plaintiffs appeal.

Appellate courts consider cases such as the one at hand *de novo* on the record, but are also "inclined to give considerable weight to the findings of the trial judge in equity cases". *Biske v City of Troy,* 381 Mich 611, 613; 166 NW2d 453 (1969),

quoting from *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962). See also *House v Bloomfield Hills,* 18 Mich App 184, 186; 171 NW2d 36 (1969), *app dis,* 384 Mich 811 (1971). As noted in *Biske,* the following are three "fundamental propositions" involved in zoning cases:

"(1) each zoning case is determined on the basis of the facts and circumstances peculiar to it; (2) to be valid a zoning ordinance must bear a direct and substantial relation to the preservation of public health, morals, safety, and general welfare; and (3) that the plaintiffs have the burden of establishing affirmatively the lack of such relationship." 381 Mich 611, 620.

Contrary to (3) above, plaintiffs have argued that the defendant township has the burden of establishing the validity of the zoning ordinance at issue as it is applied to plaintiffs' situation. Relying upon *Bristow v Woodhaven,* 35 Mich App 205; 192 NW2d 322 (1971), *Green v Lima Twp,* 40 Mich App 655; 199 NW2d 243 (1972), and *Smookler v Wheatfield Twp,* 46 Mich App 162; 207 NW2d 464 (1973), plaintiffs argue that in view of the "favored use" characteristic applied to mobile home parks, defendant had the burden to establish the validity of its action in failing to rezone plaintiffs' property.

Examining the origins of the "favored use" doctrine and its attendant shifting of the burden of proof, the Michigan Supreme Court recently overruled decisions of our Court based solely on that doctrine, and said:

"Plaintiffs must bear the burden of proof in attacking the constitutionality of the ordinance in question. It is up to them to present sufficient proofs to the court showing that the defendant city by its action violated one of their aforesaid constitutional rights and thus acted 'unreasonably.' They must show that the city, via

its ordinance, denied them substantive or procedural due process, equal protection of the laws, or deprived them of their property without just compensation. To each of these claims the court will apply their proofs presented and determine if they have met their burden in showing the ordinance in question to be 'unreasonable', for, as we have said, reasonableness is the test of its validity." *Kropf v Sterling Heights,* 391 Mich 139, 156–157; 215 NW2d 179 (1974).

Keeping in mind the above principles, this Court will now engage in its *de novo* review of the instant case.

As indicated earlier, plaintiffs are engaged in the business of building mobile homes. Plaintiffs' son testified that they needed the parcel at issue as an outlet for the "end product" of their business. Apparently, the other mobile home parks in the area had closed their doors to other manufacturers of mobile homes, such as plaintiffs.

The land bordering plaintiffs' parcel on the west was approximately 123 acres of vacant land, zoned R-3 (mobile home district). However, the owner of that property, John Bolls, had not yet developed his parcel because of the lack of sanitary sewer facilities. Testimony presented by both sides indicated that if plaintiffs' parcel was rezoned R-3, it and the Bolls' parcel would comprise over 200 acres devoted to a mobile home park, and would probably be one of the largest such parks in the State of Michigan. Three miles west of the parcel at issue is 110 acres of land currently being developed as a mobile home park. That parcel of property was rezoned R-3 in 1970.

Testimony was presented indicating that defendant township had rezoned more than 300 acres to the R-3 classification, with frontage on Hall Road, within the three years previous to the date of the trial. In fact, many of those acres composed the

parcel of land which was subject to the citizens' referendum referred to above. The fact that defendant township had indeed rezoned many acres to the R-3 classification, and that a mobile home park was in operation and another one was in the stages of development, shows that defendant township was not engaged in the practice of totally excluding this form of development. *Kropf* noted that the total exclusion of a particular use of land carried a "strong taint" of unreasonableness. 391 Mich 139, 156. Such totality is lacking in the instant case.

Both plaintiffs and defendant presented expert testimony to support their respective positions. Mr. Jack Anderson, who testified on behalf of plaintiffs, felt that the property was unsuited for single-family use and that the best and highest use of plaintiffs' property would be a mobile home development. He felt that in view of the surrounding zoning areas (AG[agricultural], R-3[mobile home district], and C-3[local commercial]) a mobile home development would be best suited for that particular parcel. He felt there was also a present demand for mobile home sites in Macomb County. He believed that mobile home use of that property would be consistent with the community's desire for a medium density development. However, Anderson also noted that a community has a legitimate interest in developing a variety of land uses with a variety of respective densities in order to maintain some sort of stability within the community, and felt that it was indeed necessary to limit the various types of development "at some point". However, he was unable to say at what point the development of mobile homes, or any particular development, should be limited. Thus, while mobile homes, as well as other multiple living units

such as condominiums, would meet the housing needs of today, Anderson concluded that a community had an interest in developing a variety of land uses and maintaining some sort of stability within the community.

A real-estate appraiser testified on behalf of plaintiffs, and stated that the demand for parcels of property zoned R-2 (multiple housing, *i.e.,* apartments) had "slackened off" in the surrounding area. In view of the zoning classification afforded the Bolls property (R-3) and the light industrial and commercial zoning classifications for the surrounding property, the real estate appraiser testified that a mobile home development would be in keeping with the surrounding area. However, he noted that a mobile home development would not help residential development, and said that it was a "low grade" form of land development.

Another one of plaintiffs' witnesses, a consulting civil engineer, opined that the land at issue could be developed to provide suitable drainage, and that any problems associated with the fact that the land was located in a flood plain could be corrected.

The defendant township had not yet adopted its master plan, although a master plan had been adopted by its planning commission and was in fact forwarded to the township board. At the time of trial, the township board was "still studying" that plan. A question arose as to the desired level of population density in the defendant township, and the township's clerk agreed that the mobile home park proposed for plaintiffs' property, with a proposed density level of 5.9 units per acre, would seem to comply with the suggested range of 2 to 6 units per acre.

Mr. John Dailey, defendant's part-time city plan-

ner, said that the township desired to balance the various types of residential uses in the community, and was concerned with the density of that development. He felt that the defendant township had made a rough plan of approximately 75% of its land devoted to single-family use, approximately 20% devoted to multiple housing and other use, with the balance devoted to mobile homes. It was his opinion that it was not in the "best interest" of the community to have plaintiffs' parcel rezoned to allow the development of a mobile home park and that the highest and best use of this property was the R-2 classification, the multiple use. He felt that mobile home parks had not been in existence long enough for community planners to know their impact on the community, particularly the financial impact (taxation) upon the community. While he admitted that mobile homes were popular and provided ready access to housing for moderate- and low-income families, he perceived that the "nature of the use" was not in the best interest of the community.

Dailey was basically opposed to allowing mobile homes to develop *carte blanche* throughout the community. He objected primarily to the size of the particular area at issue which would be devoted to mobile homes. As noted above, plaintiffs' parcel, in combination with the Bolls parcel, would constitute perhaps the largest mobile home park in Michigan. Finally, Dailey felt that the ability of mobile homes to satisfy the future housing needs of the people in metropolitan Detroit and in particular Macomb County and Macomb Township was an unknown factor. However, he did say that Macomb Township was not particularly relying on that fact to "keep them [mobile homes] out" of the township. Dailey was also unconvinced that mobile

homes paid their "fair share to the community". Also, Dailey said that he did not rely upon the fact that plaintiffs' property rested in a flood plain as a reason for disapproving of the instant proposed rezoning.

The zoning ordinance at issue does not totally exclude mobile homes. In fact, Macomb Township had one "active" mobile home site within its boundaries, and another one, the Bolls parcel, had been rezoned R-3 and was available for a mobile home park. The trial court noted that Macomb Township had provided for mobile homes, and believed that plaintiffs had failed to prove that defendant's action in denying plaintiffs' request to rezone its property was an abuse of discretion. The trial court concluded that Macomb Township had a legitimate concern for the potential threat to the overall development of the community if the instant parcel was rezoned to R-3, and noted that if plaintiffs' parcel was rezoned, it and the Bolls parcel would constitute the largest mobile home park in Michigan. Applying the proofs presented to the trial court to the principles discussed above, we find that Macomb Township was reasonable in refusing to rezone plaintiffs' parcel to a mobile home park, and that the zoning ordinance at issue is not unconstitutional as applied to the instant situation. The township afforded plaintiffs two public hearings, at which plaintiffs were able to present their case. No objection was in fact made to the procedures utilized by the township. The township's concern about the problems of traffic, living-unit-per-acre density, and the apparent inconsistency of mobile home parks with the proposed development of the township were legitimate and reasonable factors taken into account by the township in denying plaintiffs' request to rezone its

property. Plaintiffs have not shown that the township acted in an arbitrary and capricious manner with respect to plaintiffs' parcel. *Kropf v Sterling Heights,* 391 Mich 139, 159–161; 215 NW2d 179 (1974).

Affirmed. No costs, a public question being involved.

All concurred.