## TOCCO v ATLAS TOWNSHIP

1. ZONING—ORDINANCES—EXCLUDED USE—CONSTITUTIONAL LAW—
   EQUAL PROTECTION.

   A zoning ordinance which, on its face, *totally* excludes from a municipality a use recognized by the constitution or other laws of the state as legitimate carries with it a strong taint of unlawful discrimination and a denial of equal protection of the law as to the excluded use; however, such a taint is not presumed when the general use is reasonably permitted in the community and the only issue is whether it was arbitrarily or capriciously denied as to a particular parcel of land.

2. ZONING—ORDINANCES—CONSTITUTIONAL LAW—PRESUMPTION OF
   VALIDITY.

   Zoning ordinances enjoy a presumption of validity and that presumption is rebutted only when constitutional defects appear on the face of the ordinance or are shown by competent evidence.

3. ZONING—ORDINANCES—INVALIDITY—CLASSIFICATION.

   Invalidity does not appear on the face of a zoning ordinance merely from its classification of certain property for use as single residences only.

4. ZONING—ORDINANCES—CONSTITUTIONAL LAW—MOBILE HOMES—
   TRAILER PARKS—TOTAL EXCLUSION—ARBITRARY EXCLUSION.

   A township zoning ordinance is invalid insofar as it prevents the plaintiff from using his property as a mobile home park site where the plaintiff's property was not suitable for single family residential development, as presently zoned, no land in the defendant township was in fact zoned for trailer parks, no rational reasons were advanced for denial of plaintiff's rezoning

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning § 20.
[2] 58 Am Jur, Zoning §§ 16, 21.
[3] 58 Am Jur, Zoning § 43.
[4] 58 Am Jur, Zoning § 63.
   Maintenance or regulation by public authorities of tourist or trailer camps, motor courts, or motels. 22 ALR2d 774.

petition and the defendant affirmatively sought to zone trailer parks out altogether; the exclusion of plaintiff's proposed use is arbitrary, capricious, and fanciful.

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 June 4, 1974, at Lansing. (Docket No. 13951.) Decided August 27, 1974.

Complaint by Paul Tocco against Atlas Township for a declaratory judgment that defendant's zoning ordinance is unconstitutional as applied to plaintiff's property. Judgment for plaintiff. Defendant appeals. Affirmed.

*Neithercut & Neithercut* (by *Robert L. Shegos),* for plaintiff.

*Lattie & Anastor,* for defendant.

Before: McGREGOR, P. J., and R. B. BURNS and O'HARA,* JJ.

O'HARA, J. Plaintiff initiated this action on August 24, 1970, seeking to have defendant's zoning ordinance declared unconstitutional as applied to his Lake Shinanguag property in Genesee County. The trial judge so held. He entered judgment. From that judgment, the defendant appeals.

Plaintiff purchased certain property in Atlas Township, Genesee County, in 1968. His purpose in buying this land was assertedly to build and operate a mobile home park on it. He knew the acreage was zoned for agricultural use but nevertheless went ahead with the deal. At the time of purchase, the land was not under cultivation.

Testimony at trial tended to establish that this parcel would be worth more if zoned for a trailer

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

park rather than single-family homes. Testimony also established that Atlas Township was primarily rural and barren of mobile home parks at the time. The principal issue was whether the land concerned was suitable for residential development.

Paul J. Monohon, a civil engineer and land surveyor retained by the plaintiff to lay out his proposed facility, conducted soil borings on a random basis and concluded that this property was unsuitable for septic tanks. He opined that "an offsite disposal plant consisting of a 24-hour extended aeration [treatment] plant followed by sand filters" would be required. The expense made subdivision development of the plaintiff's acreage economically impractical.

John Loizon, an architect specializing in site planning for mobile home parks, testified that the plaintiff's property could not be subdivided for more than 66 to 80 homes. The approximately $1,000,000 to $1,500,000 entailed made that unfeasible, so Loizon "revised [his] thinking to development of a trailer park since * * * there were none in this area". Such a development would embrace 310 sites at a total cost of $750,000–$800,000. No projections on commercial or multiple-dwelling uses were run.

Between 31 and 52 new homes had been built annually in Atlas Township from 1967 to 1971. In the immediate area of Lake Shinanguag, 33 new homes have been built since 1967. Approximately four of these, situated to the immediate north of the plaintiff's property, were constructed within the last 30 months prior to trial. Two others were built on sites directly adjacent to it. Existing homes on the lakeshore cluster "on the east side and stretch down to Mr. Tocco's property".

James Galbraith, a professional planner retained by the defendant in contemplation of this lawsuit, testified as to the suburban-agricultural character of the Lake Shinanguag shoreline. To preserve that environment, he asserted, it should be zoned single-family residential. Mobile homes, he said, are a transitional use not compatible with such zoning. Mr. Galbraith admitted that Atlas Township contained no mobile home parks but insisted that existing zoning made ample provision for them.

William Hohloch, a consulting engineer retained to prepare sewerage studies for the defendant, testified for the defendant. Between 1968 and January, 1970, he claimed, he had developed a plan for the defendant. Applications for construction grants from the state and Federal governments were filed on September 15, 1970. Although no formal plans had been signed, defendant was proceeding to implement this plan when this case came to trial. No sanitary sewers were operating at that time.

Prior to the zoning changes that precipitated this litigation, approximately 200 acres within the defendant's boundaries were zoned for C-4 use—the classification then covering trailer parks. Various property so zoned was the site of a country club, storage facilities, and the county road commission's garage. The record indicates that certain other parcels were as yet undeveloped.

The remaining facts are not disputed. Soon after purchasing this property, the plaintiff petitioned the defendant to rezone it from RSA[1] to C-4[2] so that a trailer park could be located on it. The defendant denied that petition—even though the

---

[1] Residential Suburban Agricultural.

[2] C-4 is a commercial classification.

Genesee County Metropolitan Planning Commission[3] approved the same—and amended its zoning ordinance to provide a separate "RTP"[4] category for mobile home parks. No land in the township is so zoned. There was some conflicting evidence by township employees or officers as to whether they considered the C-4 land which had hitherto been set aside for mobile home trailer parks to have become RTP land under the amendment to the zoning ordinance. The township thereafter summarily denied a second petition of the plaintiff's and rejected those of four other applicants as well. There are still no trailer parks and no land specifically zoned for such use appeared on the zoning map.

The trial judge made specific findings of fact. We quote:

"1. The soil borings show that the property is not suitable for single dwellings.

"2. An extended aeration sewage treatment plant would be required for the proposed mobile home park, at a cost of $100,000 to $150,000.

"3. Soil conditions make it unfeasible for the use of septic tanks, ordinarily used for private residences at this site.

"4. There are no sites in Atlas Township presently being used for mobile home parks.

"5. The township is essentially rural, with approximately 100 homes on both sides of Lake Shinanguag, the largest concentration being on the M-15 side, the largest number of homes not being in the near proximity of the subject property.

"6. Considerable difficulty is encountered in recording of the property under the Plat Act because soil conditions make it unsuitable for usual sewage systems."

_____

[3] The record is somewhat confusing and to a degree unclear as to the difference between the Genesee County Metropolitan Planning Commission and the Genesee County Zoning Coordinating Committee.

[4] RTP being a residential or rural trailer park classification.

The judge concluded that the defendant had sought to zone out trailer parks and that the plaintiff's property was unsuitable for the residential development which its present zoning required. A judgment was entered invalidating the ordinance. Defendant appeals of right.

In *Kropf v City of Sterling Heights,* 391 Mich 139, 155–156; 215 NW2d 179, 185 (1974), Chief Justice KAVANAGH has stated the controlling doctrine succinctly:

"On its face, an ordinance which *totally* excludes from a municipality a use recognized by the constitution or other laws of this state as legitimate also carries with it a strong taint of unlawful discrimination and a denial of equal protection of the law as to the excluded use. Such a taint can hardly be presumed to be present in cases such as that presently before us when the general use is reasonably permitted in the community and the only issue is whether it was arbitrarily or capriciously denied as to the particular parcel of land."

The opinion expressly overruled the "preferred use" concept developed by this Court in *Bristow v City of Woodhaven,* 35 Mich App 205; 192 NW2d 322 (1971).

*Kropf* thus makes clear that the plaintiff must demonstrate that zoning ordinances are unreasonable as applied to his property. They enjoy a presumption of validity. That presumption is rebutted only when alleged constitutional defects appear on the face of the ordinance or are buttressed by competent evidence. "Invalidity does not appear on the face of the ordinance merely from its classification of certain property for use for single residences only." *Northwood Properties Co v Royal Oak City Inspector,* 325 Mich 419, 423; 39 NW2d 25, 26 (1949), quoted with approval in *Kropf,* 391 Mich at 156; 215 NW2d at 186.

The *Kropf* test establishes that the revision of its zoning ordinance by the defendant is not prima facie unconstitutional. Localities can constitutionally restrict certain land to certain uses. It follows that they can also constitutionally revise zoning laws.

The challengers must show not that the challenged action presents a debatable issue but that it is "a whimsical *ipse dixit*" admitting "no room for a legitimate difference of opinion concerning its reasonableness". *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425, 432; 86 NW2d 166, 170 (1957), quoted with approval in *Kropf,* 391 Mich at 162; 195 NW2d at 189.

We think plaintiff here has carried his burden of proof. Defendant admits that there are no mobile home parks within its limits. It also concedes that such parks were a use permitted by the C-4 designation at the time of the plaintiff's original petition for rezoning and that his petition prompted the revisions involved in this case. No land was in fact zoned RTP at the time of trial. If the plaintiff is to be believed, the defendant has since denied rezoning petitions for four other developers. The defendant itself admits to denying the plaintiff's second petition when he presented it after the creation of RTP. No rational reasons for the denial were advanced.

Our review of this record supports the conclusion of the trial judge that the defendant de facto affirmatively sought to zone trailer parks out altogether.

Part of plaintiff's claim reduces itself to a contention that his property could be more profitably developed as a mobile home park than as a subdivision. That is not enough to make its current zoning for single-family residential use unconstitutional.

The land need not be zoned for its most lucrative use. *Scholnick v Bloomfield Hills,* 350 Mich 187; 86 NW2d 324 (1957). Although depreciation of property values is one factor to be considered, *Smith v Village of Wood Creek Farms,* 371 Mich 127; 123 NW2d 210 (1963), zoning classifications may be valid despite substantial disparities in value. *Yale Development Co v City of Portage,* 11 Mich App 83; 160 NW2d 604 (1968). Residential classifications are not unreasonable simply because the parcels concerned could be more profitably put to commercial use. But such zoning may be arbitrary and irrational if the lots are in fact totally unsuitable for residential use and have neither market nor value for that purpose.

The question becomes whether the exclusion of plaintiff's proposed use is arbitrary, capricious or fanciful. The trial judge made detailed findings of fact. They are supported by credible evidence. We accord them respectful weight. They preponderate in our view.

*Kropf, supra,* is a powerful opinion. It restores Michigan zoning law to the *Brae Burn* days. But even under the *Brae Burn* aegis courts were not stripped of all right of judicial review in zoning cases.

We have hereinbefore quoted from the trial judge's findings of fact and we agree with them.

Powerful as *Kropf, supra,* is, it is not, as we read it, a judicial straightjacket mandating the approval by reviewing courts of every zoning ordinance however worded or however in fact applied.

The judgment of the circuit court is affirmed. No costs.

All concurred.