MICHAELS v VILLAGE OF FRANKLIN

1. ZONING—ORDINANCES—PRESUMPTION OF VALIDITY—CONSTITU-
   TIONAL LAW.
   Zoning ordinances are presumed valid, and the presumption is
   rebutted only where a constitutional defect appears on the face
   of the ordinance or is supported by competent evidence of a
   purely arbitrary, capricious, and unfounded exclusion of other
   types of legitimate land use.

2. ZONING—ORDINANCES—DEFECTS—SINGLE-RESIDENCE CLASSIFICA-
   TION—MORE PROFITABLE USE—CONSTITUTIONAL LAW.
   A defect does not appear on the face of a zoning ordinance merely
   because it classifies certain property for use as single residences
   only, nor is an ordinance arbitrary or unreasonable merely
   because the land can be more profitably developed if zoned
   commercial.

3. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW—TRIAL COURT'S
   FINDINGS.
   The Court of Appeals considers equity cases *de novo,* and where
   the evidence presented on the record could reasonably support
   either party, the Court gives considerable weight to the findings
   of the trial judge.

4. EMINENT DOMAIN—ZONING—PROPERTY VALUES—PUBLIC USE—CON-
   DEMNATION.
   Zoning may not be used as a method to depress property values

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning §§ 16, 256.
[2] 58 Am Jur, Zoning §§ 141, 207, 212.
   Zoning: creation by statute or ordinance of restricted residence
   districts from which business buildings or multiple residences are
   excluded. 117 ALR 1117.
[3] 5 Am Jur 2d, Appeal and Error § 822.
   Advantage which the original trier of the facts enjoyed over review-
   ing court from opportunity of seeing and hearing witnesses. 111
   ALR 742.
[4] 27 Am Jur 2d, Eminent Domain §§ 277, 442.

so that at a future date property may be acquired for public purposes.

Appeal from Oakland, William R. Beasley, J. Submitted Division 2 December 10, 1974, at Lansing. (Docket No. 20198.) Decided February 13, 1975.

Complaint by Michael M. Michaels and Delphine Michaels against the Village of Franklin, challenging the validity of a zoning ordinance as applied to plaintiffs' land. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Brennan & Bibeau, P. C.,* for plaintiffs.

*Hartman, Beier, Howlett, McConnell & Googasian,* for defendant.

Before: DANHOF, P. J., and BASHARA and ALLEN, JJ.

ALLEN, J. This case presents a single issue of the constitutionality of a zoning ordinance classifying plaintiffs' land residential rather than commercial as requested by plaintiffs and as approved by the village planning commission. Following denial of their request by the village council, plaintiffs filed suit in circuit court. April 24, 1974, the court rendered judgment for plaintiffs, holding the single residence zoning of plaintiffs' property invalid and unconstitutional as to plaintiffs' property. Defendant village appeals as of right.

The village of Franklin, "the town that time forgot", is a small community with historical significance. Its area is about 2.6 square miles and its population approximately 3500. Within its boundaries lies the Village Center Area containing the original historic establishment and most of the

single commercial and office development. This old and historic area is bounded on the north by 14 Mile Road and is roughly bisected by Franklin Road, a street which runs north and south between 13 and 14 Mile Roads. Its architecture is basically historic colonial and the area has been designated an historic district pursuant to MCLA 399.201; MSA 5.3407(1), and by the Department of Interior.

Plaintiffs' land, a quadrilateral-shaped parcel, is situated within the Village Center Area at the southeast corner of 14 Mile Road and Franklin Road.[1] The southerly portion of the quadrilateral is now zoned commercial. On it stands a 2-1/2-story colonial-type furniture store with a separate building at the rear used as a candy shop. Both buildings are owned by plaintiffs. The balance of plaintiffs' parcel contains 2.63 acres of vacant land, all zoned for single residential use.[2] The vacant area is surrounded by several different zoning classifications. Directly across 14 Mile Road at the northeast corner of the intersection, the property is zoned for office use and is vacant. Likewise, at the northwest corner of the intersection, the property is zoned for office use and is presently being used by the Franklin Cider Mill.

On the east, plaintiffs' property is bordered by a stream which flows in a deep ravine and acts as a natural barrier between plaintiffs' land and the residential homes east of the stream. On the west side of the stream and on plaintiffs' property is a

[1] The quadrilateral parcel consists of 437.75 ft. frontage on Franklin Road; 227.55 ft. frontage on 14 Mile Road; 439.36 ft. deep on the east and approximately 425 ft. deep on the south. See map at end of opinion.

[2] Unlike most zoning ordinances, the Village of Franklin ordinance contains no provision for multiple (apartment) dwelling units. *See Franklin Village Square Corp v Village of Franklin,* 20 Mich App 671; 174 NW2d 609 (1969).

small pond. The pond is 27 feet below the ground on which stands the furniture store. On the south is a strip zoned for commercial use extending south approximately 1-1/2 blocks. This strip constitutes the central business district of the village. At the rear of the commercially zoned strip is an area zoned for single residential use.

The quadrilateral parcel is not topographically uniform. That portion of the parcel which fronts on 14 Mile Road consists of a flood plain when the river to the east overflows and makes it unsuitable for dwelling sites. The land slopes significantly from its high point at the furniture store to the pond and to the intersection at Franklin Road and 14 Mile Road. The drop over the 437 feet of Franklin Road is 19 feet.

On March 23, 1972, the village planning commission unanimously approved changing the zoning from its present R-4 Single Residential to C-1 Local Business.[3] On June 12, 1972, the village council considered the request and adopted the following substitute motion on a vote of 4-2.

"Whereas it is the judgment of the council of the Village of Franklin that it is not in the best interests of the village to permit commercial development of the property located at the southeast corner of Fourteen and Franklin Roads owned by Mr. Michael Michaels and,

"Whereas it is further the judgment of the Council that this land should be retained in its present state and,

"Whereas it is the further judgment of the Council that

---

[3] "With regard to this petition, the Commission was in accord that the present zoning did, in fact, result in a hardship to the Petitioner in the use of the land. It was the opinion of the Commission that the topography and location with regard to busy thoroughfares and other nearby commercial activity that the residential zoning of said lots was unreasonable." Minutes of Planning Commission Meeting March 23, 1972.

Mr. Michael Michaels is entitled to reasonable compensation for his property and,

"Now therefore be it resolved that the application of Mr. Michaels for rezoning of lot 26 and part of lot 25, supervisors plat #8 from R-4 to Commercial Zoning be denied and a committee be appointed by the chairman to enter into negotiations with Mr. Michael Michaels for the eventual purchase of this property by the village subject to the approval of its electorate."

On November 2, 1972, the village council sought to clarify its earlier resolution by adopting the following:

"[B]e it resolved that the resolution of June 12, 1972, relating to lot 26 and part of lot 25, supervisors plat #8 be clarified and that council's purpose and intent in passing such resolution was:

1. To deny the petition for rezoning as not being in the best interests of the village.

2. To express the council's belief that the property in question should be public land and left in an undeveloped condition.

3. To require the appointment of a committee to negotiate with the property owner for the purchase of his property by the village, such purchase to be subject to approval by the village electors because of a village charter provision.

"Be it further resolved that by the resolution of June 12, 1972, this council did not intend to suggest that the present zoning of the property is confiscatory or that the owner would be entitled to any compensation for it except if a purchase thereof was negotiated."

The trial judge viewed the parcel in question and, following the conclusion of trial, made specific findings of fact:

" * * * the popular Cider Mill has been located at the Franklin-Fourteen Mile intersection for many, many

years and during the fall of each year is the focal point of very heavy, commercial vehicular traffic. This Court accepts as substantially accurate the testimony indicating the heavy volume of autumn traffic generated by the Cider Mill. This commercial use is inconsistent with a single residence use of the subject real property.

" * * * plaintiffs' subject real property is *not* part of a residential neighborhood. The Franklin River and its flood plain separate plaintiffs' property from the residences to the east.

" * * * single residence zoning of plaintiffs' property is a kind of spot zoning. The property immediately south on the east side of Franklin is commercial and this commercial use extends south, including the retail stores that comprise most of defendant's business district.

" * * * neither the master plan nor the recommendation of the planning commission, nor even the resolutions of defendant council, assert that single residence use of plaintiffs' real property is either reasonable or desirable.

* * *

"Against this array of facts counsel for defendant argues valiantly that since plaintiffs' property has 'value' even when zoned for single residence use, this Court should uphold the single residence zoning. * * * But the fact is, this record indicates plaintiffs' property is worth far more if zoned for commercial, office or multiple residential use. However, this Court does not believe that the *sole issue* here is whether all of the value in plaintiffs' property is *confiscated* by single residence use. Diminution in economic value is only one of many factors that the Court must consider in determining the 'reasonableness' of zoning."

Chief Justice KAVANAGH, speaking for the majority in the landmark case *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974), clarified the rules governing challenges to zoning ordinances. The decision made clear that zoning ordinances are presumed valid—a presumption only rebutted when a constitutional defect appears on the face of the ordinance or is supported by competent evidence of a purely arbitrary, capricious

and unfounded exclusion of other types of legitimate land use. A defect does not appear on the face of an ordinance merely because it classified certain property for use as single residences only, *Northwood Properties Co v Royal Oak City Inspector,* 325 Mich 419, 423; 39 NW2d 25, 26 (1949), quoted with approval in *Kropf,* 391 Mich at 156; 215 NW2d at 186, nor is an ordinance arbitrary or unreasonable merely because the land can be more profitably developed if zoned commercial. *Penning v Owens,* 340 Mich 355, 367; 65 NW2d 831 (1954). This Court recently had occasion to analyze the implications of *Kropf,* in *Tocco v Atlas Twp,* 55 Mich App 160, 167; 222 NW2d 264 (1974)[4]:

> "*Kropf, supra,* is a powerful opinion. It restores Michigan zoning law to the *Brae Burn [Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957)] days. But even under the *Brae Burn* aegis courts were not stripped of all right of judicial review in zoning cases.
>
> "We have hereinbefore quoted from the trial judge's findings of fact and we have agreed with them.
>
> "Powerful as *Kropf, supra,* is, it is not, as we read it, a judicial straightjacket mandating the approval by reviewing courts of every zoning ordinance however worded or however in fact applied."

Both in *Kropf* and in the case before us, plaintiffs and defendants presented expert witnesses on the question of the reasonableness of the ordinance. In each instance, the testimony was conflicting. In this situation, the rule adopted by *Kropf* was:

> "But in cases such as we have before us, where the evidence presented on the record could reasonably support either party, this Court feels that this writer's

---

[4] *Tocco* sustained the trial court's finding that a zoning ordinance which limited property for single residence purposes (as compared to plaintiff's request for mobile home park purposes) was unreasonable. In reaching this result, the Court was strongly influenced by the trial judge's findings of fact which the Court found supported by credible evidence and to which the Court accorded respectful weight.

words in *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962), are most appropriate and should serve as a guideline for this Court and the lower courts reviewing similar cases *de novo:*

   " 'This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. We do not ordinarily disturb the findings of the trial judge in an equity case, unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge.' " 391 Mich 139, 163.

This Court, in *Drettman v Macomb Twp,* 53 Mich App 35, 37; 218 NW2d 399 (1974), an opinion subsequent to *Kropf,* adopted the same test:

   "Appellate courts consider cases such as the one at hand *de novo* on the record, but are also 'inclined to give considerable weight to the findings of the trial judge in equity cases'."

   The critical factual question in the instant case is whether, after allowing for the fact that some of the area could not be used for home sites because of the admitted flood plain, the necessary utilities and road could be built and the homes still sold at a profit. If so, the zoning would not amount to so arbitrary a classification as to prevent plaintiff from using the land for the only purpose for which it was zoned. On this question the testimony was sharply conflicting. Plaintiffs' witness testified that development costs would exceed the estimated sale price and that the net loss would increase as the number of lots developed decreased. Plaintiffs' witnesses also testified that the location of the prop-

erty at a busy intersection bounded on the south by commercial properties made the site unsuitable for residential development and that because of the flood plain and rolling topography, not more than about three homes could be realistically built. Defendant's witnesses, using lower estimates of development costs, asserted that the site, with its pond and stream, would make an ideal location for residences built facing to the east and that the market value of the developed land would exceed the development costs. Defendant's witness further testified commercial development would be injurious to the community because it would further clog traffic at the busy intersection and would adversely affect the residential development east of the stream. Having read the record and studied the exhibits, we find the trial judge's finding of fact strongly supported by the evidence. In conformity to the tests laid down in *Kropf, Tocco,* and *Drettman, supra,* we accord them respectful weight and find plaintiff has carried the burden of proof that the ordinance as applied to plaintiffs' property is arbitrary and unreasonable.

Our conclusion that the zoning was arbitrary as applied to plaintiffs' property is supported by a fact not present in any of the cases cited. As noted earlier, in first denying plaintiffs' application for rezoning, the village council by resolution stated "the land should be retained in its present state". Whether this meant retained in its present state of zoning as residential or whether it meant retention in a vacant state was at that point unclear. This ambiguity was resolved in the subsequent clarifying resolution in which the council stated "the property in question should be public land and left in an undeveloped condition". Clearly, by this action the council indicated that the council itself had reservations about the practicality of

developing the property for single residential purposes. It also signalled a forthright intention of the council to work towards the village long-range Master Plan which designated the property as a public parks undeveloped area. Obviously, the village at some future date intends to acquire the property by condemnation, assuming that in the interval it could not negotiate a purchase with plaintiffs and secure approval by the electorate as mandated by its charter. Zoning may not be used as a method to depress property values so that at a future date property may be acquired for public purposes. In *State, ex rel Tingley v Gurda,* 209 Wis 63; 243 NW 317 (1932), quoted with approval in *Grand Trunk W R Co v Detroit,* 326 Mich 387, 397; 40 NW2d 195 (1949), it was said:

" 'In an effort to find the purpose of such a method of zoning, we find suggestions in the record that the city plainning commission *contemplates some time in the future* a boulevard along Mud Creek, and with that in view, a zoning regulation has been promulgated destroying the value of the property which will later have to be taken for that purpose, so that the city may be able to carry out the boulevarding project with less expense to itself.

*            *            *

" 'The zoning power is one which may be used to the great benefit and advantage of a city, but as this case indicates, it is a power which may be greatly abused if it is to be used as a means to depress the values of property which the city may upon some future occasion desire to take under the power of eminent domain. *Such a use of the power* is utterly unreasonable, and cannot be sanctioned.' " (Emphasis supplied.)

We do not go so far as to conclude that the present zoning was enacted to purposely depress the market value of plaintiffs' parcel. However, we do hold

that in view of the evidence as to the unsuitability of the property for residential purposes, the council's refusal to rezone is unreasonable. As long as plaintiff is unable to develop and market the lands for single home sites, defendant will enjoy its desired undeveloped open space. "The town that time passed by" may not have the time to obtain its desired use without paying fair compensation or rezoning as requested.

Affirmed. No costs, a public question being involved.