SMITH *v.* VILLAGE OF WOOD CREEK FARMS.

1. APPEAL AND ERROR—DE NOVO REVIEW—QUESTIONS REVIEWABLE—EVIDENCE.

Questions as to admissibility of evidence in injunction suit are not determined where Supreme Court hears the case *de novo* and decides, without consideration of the evidence to which objection is made, that the trial court made proper disposition of the case.

2. MUNICIPAL CORPORATIONS — ZONING — RESIDENCE — EVIDENCE — VALUE.

Record in suit to declare void village zoning ordinance, restricting use of 3 triangular tracts and 1 rectangular tract to residence purposes *held*, to support trial court's finding that the residential use was not the highest and best use for the triangular tracts but was for the rectangular tract, where evidence and trial court's view of the premises showed the 3 tracts were almost hemmed in by commercial locations and busy highways rendering them very undesirable and of little value for residence purposes but that such was not the case for the rectangular tract.

3. SAME—ZONING ORDINANCE—VALUE.

A municipal zoning ordinance which renders property almost worthless is unreasonable and confiscatory, hence, illegal.

4. SAME—ZONING ORDINANCE—DIMINUTION OF PROPERTY VALUES.

The extent to which property values are diminished by provisions of a municipal zoning ordinance must be given consideration in determining whether the invasion of property rights under a purported police power is unreasonable and confiscatory.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 703.
[2, 5] 58 Am Jur, Zoning §§ 20, 21, 142, 258–261.
Zoning: creation by statute or ordinance of restricted residence districts from which business building or multiple residences are excluded. 117 ALR 1117.
[3] 58 Am Jur, Zoning §§ 19, 21, 22, 140.
[6] 14 Am Jur, Costs §§ 11, 22.

5. Same—Zoning Ordinance—Residence—Commercial Use—Value
   —Highways.

   Village zoning ordinance restricting use of plaintiffs' 3 triangu-
   lar tracts and 1 rectangular tract to residence use *held,* invalid
   as to the 3 tracts which evidence shows were adjacent to busy
   highways and near other commercial areas and for residential
   use were worth less than 8% than value for commercial use
   but valid as to larger rectangular area more remote from
   commercial locations, less hemmed in by busy highways, and
   worth upwards of 22% of commercial value when used · for
   residence purposes.

6. Costs—Neither Party Prevailing in Full.

   No costs are allowed where decree granting part of relief sought
   in injunction suit as to validity of village zoning ordinance is
   affirmed, but neither party has prevailed in full.

Appeal from Oakland; Holland (H. Russel), J.
Submitted June 4, 1963. (Calendar Nos. 12, 13,
Docket Nos. 49,752, 49,753.) Decided September 4,.
1963.

Bills by George Wellington Smith and Elizabeth
Shaw Smith against the Village of Wood Creek
Farms, a municipal corporation, and the village
council to declare zoning ordinance void as to cer-
tain of their properties and to enjoin enforcement
thereof. Cross-bills to enjoin plaintiffs from adver-
tising the properties as commercial while they are
zoned residential. Decrees in consolidated cases for
plaintiffs as to 3 parcels and for defendants as to
fourth parcel. Defendants appeal. Plaintiffs cross-
appeal. · Affirmed.

*Patterson & Patterson and Barrett (Clarence K..
Patterson,* of counsel), for plaintiffs.

*Wendell Brown,* for defendants.

Dethmers, J. Plaintiffs are owners of outlots A.
and B of Supervisor's Plat of Wood Creek Farms:

and outlots C and D of Supervisor's Plat of Wood Creek Farms No. 1 in defendant village. They seek, in 2 cases, one as to outlot A and the other as to outlots B, C, and D, to enjoin enforcement as to those outlots of a zoning ordinance classifying the lots as "Residence No. 1", which is the classification of the entire square mile composing the village. Defendants filed cross-bills seeking to enjoin plaintiffs from advertising and maintaining signs on the lots indicating that they are zoned "restricted commercial". The 2 cases were combined for trial and appeal. From decree granting plaintiffs the relief they sought as to outlots A, B, and C, but denying it as to outlot D, and denying defendants the relief sought in their cross-bills as to outlots A, B, and C, but granting it as to outlot D, defendants appealed and plaintiffs cross-appealed as to outlot D only.

The trial court found that outlots A, B, and C were "grossly undesirable and unfit for residential purposes", but that this was not true of outlot D. That presents the crucial question here on appeal. Defendants raise 7 questions concerning admissibility of evidence, which we need not determine because we hear the case *de novo* and decide, without consideration of the evidence to which defendants object, that the trial court made proper disposition of the cases. *Bruso* v. *Pinquet,* 321 Mich 630, 640.

All 4 of the outlots border on Northwestern highway, which bisects the village from its northwestern to its southeastern corners and separates the 2 mentioned supervisor's plats. It is a very heavily traveled, high-speed, 4-lane superhighway. The State highway department proposes to widen it from its present 204 feet to 318 feet by taking 114 feet from the northeast side, including strips from outlots A and B, and to make it into a limited access freeway, dipping down under bridges to about 18 feet below grade at intersections. Such depressions will

occur at the locations of outlots A, B, and C, which are at Northwestern highway's intersections with Thirteen Mile road and Inkster road, respectively. After completion traffic will increase and become even heavier than now. Thirteen Mile road and Inkster road are also very busy highways.

Plaintiff's brief accurately describes the 4 outlots as follows:

"Outlot A is located at the northern limits of the village on the north side of Northwestern highway. It is triangular in shape, caused by the convergence of Northwestern highway and Thirteen Mile road. The frontage on Northwestern highway is 607.79 feet. The frontage on Thirteen Mile road 531.04 feet, with a depth on the hypotenuse of approximately 500 feet, giving an area of approximately 3 acres.

"Outlot B is located at the southerly limits of the village on the north side of Northwestern highway and also is in the shape of a triangle, caused by the convergence of Northwestern highway and Inkster road. It has a frontage on Northwestern highway of 494.58 feet, a frontage on Inkster road of 483.04 feet and along the hypotenuse of approximately 400 feet, which makes an area of between 2 and 2-1/2 acres.

"Outlot C is located at the southerly limits of the village (immediately across from outlot B and) on the south side of Northwestern highway at the corner of Inkster road. It is also triangular in shape, caused by the convergence of Northwestern highway and the southerly limits of the subdivision. It has a frontage on Northwestern highway of 441.53 feet and an area of approximately 1-1/4 acres.

"Outlot D is located on the south side of Northwestern highway approximately midway between the northern and southern limits of the village. It is rectangular in shape, with frontage on Northwestern highway of 1123 feet, an average depth of 405 feet and bounded, in addition to the highway,

by 3 subdivision roads, namely Wellington drive, Valley road and Hickory road, the latter being also known as Village lane."

It then concludes with the following factual statement:

"Outside of the village, Northwestern highway frontage for at least 2-1/2 miles both northwest and southeast of the village is almost exclusively commercial, either by commercial establishments now existing or commercial zoning.

"An examination of the zoning map of Farmington township, defendants' exhibit 4, shows that the frontage on both sides of Northwestern highway northwest of the village is zoned commercial, and an examination of defendants' exhibit 7 discloses that many businesses exist there. An examination of the Northwestern highway frontage southeast of the village, *i.e.,* southeast of Inkster road, shows almost solid commercial development. A count as shown by exhibit 7 discloses 47 commercial establishments and only 8 residences"

which is amply supported by the record. The record also shows that plaintiffs, as developers of the 2 plats, by an unrecorded plat used in making sales, caused residential restrictions to be imposed on all other lots therein, but designated the outlots for nonresidential use.

The trial court said that the case was submitted for determination of "the single issue of whether or not the zoning ordinance as it applies to said outlots is fair, reasonable, valid and constitutional." It held that it was as to outlot D and not as to outlots A, B, and C. The court's opinion went on to say, in part:

"This court is of the opinion, in view of the basic findings of fact, that said ordinance as it relates to outlots A, B, and C is unreasonable, confiscatory, unconstitutional and hence void. * * *

"That outlots A, B, and C, because of their location and surroundings, are grossly undesirable and unfit for residential purposes—that is undesirable and unfit for the building of homes in keeping with the type of home and plan of residential development in the area. Prime factors considered by the court are the triangular shapes, proximity to highways on 2 sides of each lot and the detrimental effect which will accrue to such residential locations because of traffic, noise and the usual incidents of vehicular traffic. To have outlots A, B, and C zoned for residential use, which would be contrary to the best use and a use incompatible with the present standard of residential development and sold at the prices herein indicated for residential property as opposed to prices if sold for commercial uses would be tantamount to confiscation. This court recognizes that some disparity in values between residential and commercial uses will always exist. The disparity in values here between residential and commercial uses would not in and of itself amount to confiscation if it were not for the salient fact that said outlots A, B, and C are unfit or highly undesirable for residential purposes.   *   *   *

"Because the court believes as it has previously found that the best use of outlot D is residential and because there is no disparity in value between residential and commercial which would amount to confiscation, plaintiffs' prayer to hold the ordinance void as to outlot D must be denied."

Defendants' brief, in its statement of facts, under the heading "Facts admitted to be true" says that "The proofs show that residence purposes is not the highest and best use of outlots A, B, and C". The trial court so found, but found to the contrary as to outlot D.

Plaintiff testified that he has been in the real estate business for 36 years, buying farms and developing them into highly restricted residence communities

and that he had done so with respect to a large part of the 2 supervisor's plats here involved. He further testified that in his opinion the outlots were valueless zoned residential, but, zoned commercial, would be worth as follows: outlot A, $27,500, which he had been offered for it if it could be so rezoned; outlot B, $40,000; outlot C, $30,000, and outlot D $125,000. He also testified that the traffic on Northwestern highway was extremely heavy, with 2 lanes of traffic going to Detroit in the morning and coming from it in the evening, with sometimes a third lane as drivers go off and drive on the berm; that there are places that back up traffic for nearly a mile to get through a cross-street with traffic light; that it is a hazardous job to get across Northwestern highway at its intersection with Thirteen Mile road because the traffic is so heavy, even after sundown.

The trial court found as to value of the lots zoned residential or commercial, respectively, as follows: outlot A, residential—$2,000, commercial—$32,500; outlot B, residential—$1,850, commercial—$27,000; outlot C, residential—$1,700, commercial—$25,000; outlot D, residential—$28,000, commercial—$125,000. Competent testimony supports the figures. The court said that these differences, alone, could not be controlling of the result, but may be considered in reaching a determination. So held in *Ervin Acceptance Company* v. *City of Ann Arbor*, 322 Mich 404; *Ritenour* v. *Township of Dearborn*, 326 Mich 242.

For plaintiffs a witness, in the real-estate business there for 35 years, testified that in his opinion the outlots have no value zoned residential; a registered architect testified that he is familiar with the subdivision in question, designed and supervised construction of approximately 20 houses in it and that the outlots were undesirable for residence purposes, but that outlot D was less undesirable for that purpose than the others, that he had had experience

living near Northwestern highway and at times it seemed "like the truck traffic was right in my backyard."

For defendants witnesses were called, as follows: the chairman of the village planning commission testified that the entire village was zoned residential, that there are no commercial installations in the village and that there is no need for them because the requirements of village residents for services of commercial establishments are adequately cared for by business places near, but outside, the village; that most of the principal intersections with Northwestern highway near, but outside, the village are commercial; that he objected to commercial classification for these outlots because it would be detrimental to property values and to the appearance of the village and there was no foreseeable need therefor. The township assessor testified that the general effect of commercial or business next to residential is adverse; that sight and sound barriers could be erected, such as high concrete walls, and that these would tend to cut down depreciation to residential lots caused by an adjacent superhighway and that values of houses are not adversely affected by proximity of such highways. Members of the village officialdom and residents testified that there was no demand or need for additional commercial establishments to serve the people of the village. One resident testified that he had long resided near the highway and had become accustomed to the noise from traffic on it. A realtor called as witness by defendant testified that residential is not the highest and best use for outlots A, B, and C, but is for outlot D. The general thrust of the testimony for the defense was that commercial businesses were not needed in the village because of the abundance of them nearby outside the village limits.

The testimony, persuasive to the trial court, that the surrounding of outlots A, B, and C on 2 of their 3 sides by busy highways would render them highly undesirable and unfit for residential use because of traffic-induced noise, fumes, and safety hazards, was not appreciably refuted by testimony of defendants' witnesses. The commercial condition and zoning of property, outside of the village, but near outlots A, B, and C on Northwestern highway is also a factor to be considered in determining the reasonableness of the restriction to "residential" of these outlots. Because outlot D, a considerably larger tract than the other 3 outlots, was bordered on but 1 side by a highway, the court concluded that it was reasonably usable for residential purposes even though it found its value for residential only $28,000 as contrasted with $125,000 for commercial. Furthermore, outlot D is not, as in the case of outlots A, B, and C, almost hemmed by commercial locations. The court found, as we think the record supports:

"That the use of outlots A, B, and C for commercial use (depending upon the type of commercial use, type of development and appointments) would have some adverse effects upon contiguous lots. The developing of outlot D for commercial purposes would have a major or highly detrimental effect upon contiguous lots which surround said outlot D on 3 sides."

The court's view, distinguishing between outlots A, B, and C and outlot D, gained, no doubt, in part from personally viewing the premises, also finds support in the testimony of a plaintiffs' witness that D is less undesirable for residential use than are A, B, and C, and the testimony of a defendants' witness that residential is not the highest and best use for A, B, and C but is for D.

In the *Ervin Acceptance Company Case, supra,* 409, 410, this Court said:

"In *City of North Muskegon* v. *Miller,* 249 Mich 52, we held that a zoning ordinance that renders property almost worthless is unreasonable and confiscatory, and therefore illegal.

"In *City of Pleasant Ridge* v. *Cooper,* 267 Mich 603, 608, we quoted with approval from *Dowsey* v. *Village of Kensington,* 257 NY 221, 231 (177 NE 427, 86 ALR 642), where the court said:

" 'Certainly an ordinance is unreasonable which restricts property upon the boundary of the village to a use for which the property is not adapted, and thereby destroys the greater part of its value in order that the beauty of the village as a whole may be enhanced. In such case the owner of the property cannot be required to ask as a special privilege for a variation of the restriction. The restriction itself constitutes an invasion of his property rights.'

"In *Reschke* v. *Village of Winnetka,* 363 Ill 478, 486 (2 NE2d 718), it is said:

" 'In determining whether the invasion of property rights under a purported police power, is unreasonable and confiscatory, the extent to which property values are diminished by the provisions of a zoning ordinance must be given consideration.' "

In *Long* v. *City of Highland Park,* 329 Mich 146, the 8th syllabus, appears the following:

"Continuation of restriction to single-dwelling-house use of property by zoning ordinance *held,* to bear no reasonable relation to public health, safety or general welfare of the people, where avenue upon which property faced was a heavily-travelled main thoroughfare, predominantly devoted to nonresidential uses, to result in diminution of value from about $40,000 to less than $5,000, and restriction to such residence use by way of covenant in deed has expired."

In point with respect to outlots A, B, and C being at intersections of 2 busy highways, with commercial locations nearby and the existence of subdivision restrictions permitting their business use, is the following from syllabus 5 of *McGiverin* v. *City of Huntington Woods,* 343 Mich 413:

"Application of single family residential zone to block of 8 lots, each 20 feet wide, located on northwest corner of intersection of 2 busy thoroughfares was unreasonable, and deprived owners of their property without due process of law, where a shopping center was located on diagonal corner, a doctor's clinic on another corner of the intersection and 5 residential dwellings are north of the tract and subdivision restrictions permit use for stores as desired by plaintiff owners (City of Huntington Woods Ordinance No 130)."

In *Lincolnhol* v. *Village of Shoreham,* 368 Mich 225, in which a village official also testified, as in the instant case, that the business needs of the village residents were taken care of in areas adjacent to the village, this Court said (pp 229, 230):

"Defendant called Irving W. Colburn, an architect and planner, who testified the zoning ordinance provided the best use of the property as presently zoned—residential. Testimony taken on a special record reveals the witness considered the zoning ordinance proper if the village of Shoreham was to retain its characteristics and not deteriorate the residential qualities of the neighborhood area. He further stated that the adjacent area, in his opinion, took care of the business needs of the village.  *  *  *

"A zoning ordinance which restricts property to a use for which it is not adapted and thereby destroys the greater part of its value in order that the beauty of the municipality may be enhanced is unreasonable. *Grand Trunk Western R. Co.* v. *City of Detroit,* 326 Mich 387. See, also, *City of Pleasant Ridge* v.

*Cooper,* 267 Mich 603, wherein this Court ruled an ordinance is unreasonable which restricts property upon a boundary line of a village to a use for which the property is not adapted."

Under the above expressions of this Court and the facts in this case, we think the trial court made proper disposition of these cases.

Affirmed. No costs, neither party having prevailed in full.

CARR, C. J., and KELLY, BLACK, KAVANAGH, SOURIS, SMITH, and O'HARA, JJ., concurred.