LAND DEVELOPMENT CORPORATION v TOWNSHIP OF
BLOOMFIELD

1. Appeal and Error—Equity—De Novo Review—Findings of
   Fact.

   The Court of Appeals reviews equity cases *de novo* but hesitates
   to overturn the trial court's findings of fact unless convinced
   that it would have reached a different result.

2. Zoning—Ordinances—Rationality—Reasonable Use—Confisca-
   tion.

   An application of a zoning ordinance to particular property, even
   though rational, may prevent any reasonable use of the prop-
   erty and, hence, be invalid or confiscatory.

3. Zoning—Restrictions—Reasonable Use—Confiscation—Feasi-
   bility—Usable Value.

   A zoning restriction deprives the zoned property of any reasona-
   ble use and is, therefore, confiscatory if all permitted uses are
   so devoid of feasibility that the restriction has accomplished the
   destruction of all usable value.

4. Zoning—Ordinances—Proofs—Reasonable Use.

   An aggrieved property owner, in order to sustain an attack on a
   zoning ordinance, must show that if the ordinance is enforced
   the consequent restrictions on his property preclude its use for
   any purposes to which it is reasonably adapted.

5. Zoning—Ordinances—Single-Family Residence—Confiscation
   —Proofs.

   A single-family residence classification in a zoning ordinance, as
   applied to a plaintiff's property, is confiscatory and void where
   the plaintiff introduced credible expert testimony which was
   not adequately challenged that, if the land was subdivided and
   sold as single-family residential lots in accordance with the
   present zoning classification, the cost of development would
   exceed the sales price; the plaintiff succeeded in demonstrating

---

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error § 822.
[2–5] 58 Am Jur, Zoning § 141.

> that the restriction has accomplished the destruction of all usable value and precludes the use of the property for any purposes to which it is reasonably adapted.

Appeal from Oakland, Arthur E. Moore, J. Submitted Division 2 June 4, 1974, at Lansing. (Docket No. 17910.) Decided September 11, 1974.

Complaint by Land Development Corporation against Bloomfield Township to have the township's zoning ordinance declared unconstitutional as it applied to plaintiff's property. Judgment for plaintiff. Defendant appeals. Affirmed.

*Hartman, Beier, Howlett, McConnell & Googasian,* for plaintiff.

*Dillon & Lang,* for defendant.

Before: McGREGOR, P. J., and R. B. BURNS and O'HARA,* JJ.

McGREGOR, P. J. On July 25, 1973, a judgment was entered in Oakland County Circuit Court declaring the zoning ordinance of the Township of Bloomfield unconstitutional as applied to plaintiff's property. From that judgment the defendant township appeals.

Plaintiff Land Development Corporation[1] is the land contract purchaser of a parcel of land located in Bloomfield Township. The land was purchased in November, 1972, for $130,000 and contains 6.597 net acres. It is located on the north side of West Maple Road, approximately 400 feet east of Inkster Road, and has a frontage of 473.75 feet on Maple Road and a north-south depth of 710 feet.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Since merged with Binder and Lark Building Company.

The northeast corner of the Maple-Inkster Road intersection is zoned B-2 (community business district) and is occupied by a gas station. The land next easterly is zoned O-1 (office-building district) and is occupied by a branch bank. Plaintiff's property is bounded on the south by Maple Road, a 120-foot right-of-way; on the west by the branch bank and vacant property, approximately two acres in size, zoned to office use; on the north by a school; and on the east by a single residential site.

Plaintiff sought to have its property, which is zoned R-3 (one-family residential) under the Bloomfield Township zoning ordinance, zoned to R-M (multiple-family residential district). This request was denied by the township, the reason given being that the property could be used under the "cluster" option available to the plaintiff. This option is set forth in Ordinance No. 209.[2] Plaintiff's proposal to the township was to construct 26 multiple units on the west 319.75 feet of the subject land and 7 "cluster" units on the east 154 feet; this proposed use, as presented to the trial court, would have placed 42 multiple units on the site. Under defendant's zoning ordinance, multiple dwellings are expressly suggested to serve as a transition between single-residential and nonresidential uses.

The trial court found that plaintiff's property cannot be reasonably, economically, or practically used for single-residential purposes under its zoned R-3 classification. The court also concluded that the plaintiff had proven that its loss was so great as to amount to unconstitutional confiscation of property without compensation.

---

[2] This "cluster option" would allow plaintiff to construct, with the permission of the planning commission, 11 units in the first 360 feet of the property. These units could be built in groups of four, attached through a common party wall, at a density of three units per acre.

The sole issue before us is whether the trial court erred in determining that the zoning ordinance is unconstitutional, as applied to plaintiff's property, as being confiscatory, arbitrary and capricious.

Any extended or detailed review of the conflicting testimony adduced at trial would serve no useful purpose here. It is sufficient to note that plaintiff introduced expert testimony to the effect that, if the land was subdivided and sold as single-family residential lots in accordance with its present zoning classification, the cost of development would exceed the sales price, *i.e.,* plaintiff would lose money on the sale of the lots. This expert opinion was premised on a number of factors. First, the property is located on a heavily-travelled thoroughfare and is adjoined by properties zoned for commercial and office use, thus rendering it less attractive to prospective home buyers. Second, the rear portion of the parcel is traversed by a deep ravine which renders between one-fourth and one-third of the land unsuitable for building. Third, the township zoning ordinance imposes minimum floor space requirements which would necessitate the construction of large and relatively expensive homes.[3] On the basis of these and other considerations, the plaintiff's witness concluded that the property cannot be practically, economically or reasonably used as presently zoned.

An expert witness, testifying on behalf of defendant, stated that the property was worth $96,-000 as presently zoned. However, he admitted that he knew nothing about development costs, he did not incorporate the cost of a sanitary sewer, and

[3] The R-3 classification of plaintiff's property requires 1850 square feet in a one-story home; 2075 square feet in a one-and-one-half-story home, and 2200 in a two-story home. Under the "cluster option", the respective figures are 1450, 1600 and 1650.

he did not take into account the topography or the commercial properties in the vicinity of the parcel in question. In later testimony, he indicated that one-third of the property was not usable for any purpose and that his opinion as to the previous values he had quoted should be reduced by one-third.

Although this Court reviews equity cases *de novo,* it has often been noted that we hesitate to overturn the trial court's findings of fact unless convinced that we would have reached a different result. *Kropf v Sterling Heights,* 391 Mich 139, 162–163; 215 NW2d 179 (1974). In the present case the trial court has favored us with an incisive and well-written opinion. In that opinion, the trial court adopts the testimony of plaintiff's expert witness in the following terms:

"Mr. Gerald Anderson, a well-qualified and competent real estate appraiser, whose testimony this court believes, testified that he had given consideration to several methods of developing the subject property under its present zoning classification. Based on Mr. Anderson's analysis, it appears and the court finds that the required development costs, including utilities, grading, engineering, costs of sales, and other normal expenses, would exceed what could be realized from this property if it were subdivided under the R-3 zoning classification; further, that if the property were divided into eight sites (exhibit 16), the cost of development would exceed the retail sales price of the individual lots by more than $2,000 and that if the site were divided into four single-family residential sites (exhibit 17), the cost of development would exceed the retail sales price of the resulting lots by $292. Mr. Anderson's testimony was that the property cannot be practically, economically and reasonably used under the R-3 Zone District. It is adopted by the court. The court further finds that plaintiff's property would be worth $168,000 for multiple dwelling purposes."

Noting that "[g]ross disparity in value alone is not *necessarily* sufficient to make a zoning ordinance unconstitutional [but is] one of the factors which is to be considered" the trial court concluded that:

"Plaintiff's property cannot be reasonably, economically or practically used for single residential purposes under its zoned R-3 classification. The abutting commercial, school and office uses, as well as the high volume of traffic, make the site impractical and undesirable for conventional single detached dwellings. The size of the parcel does not permit developing the property in any manner so as to screen out these undesirable amenities and the topography is such that to create single family residential sites would require desecration of the natural beauty which the land presently enjoys."

Having carefully reviewed the record in its entirety, we cannot say that the conclusions of the trial court are wrong or differ from those we would have reached, had we been in his position. The courts of this state have long recognized that the application of a zoning ordinance to particular property, though rational, may prevent any reasonable use of the property and, hence, be invalid as confiscatory. *Smith v Village of Wood Creek Farms,* 371 Mich 127; 123 NW2d 210 (1963); *Reibel v Birmingham,* 23 Mich App 732; 179 NW2d 243 (1970); *Trever v Sterling Heights,* 53 Mich App 144; 218 NW2d 810 (1974). In *Reibel, supra,* then Judge LEVIN stated (p 739):

"A zoning restriction deprives the zoned property of any reasonable use and is, therefore, confiscatory if all permitted uses are so devoid of feasibility that the restriction has accomplished the destruction of all usable value."

Speaking to the same point, our Supreme Court,

in *Kropf v Sterling Heights, supra,* most recently noted that (pp 162–163):

"Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted."

In our judgment, plaintiff in this case has succeeded in demonstrating that "the restriction has accomplished the destruction of all usable value" and precludes the use of the property "for any purposes to which it is reasonably adapted". We therefore hold that the trial court did not err in determining that the zoning ordinance, as applied to plaintiff's property, is confiscatory, and for that reason, void.

Affirmed.

All concurred.