### ROSSI v TOWNSHIP OF RICHFIELD

1. Zoning—Zoning Boards—Arbitrary Exclusion—Appeal and Error.

   Appellate courts will not reverse the decision of a local zoning board in the absence of a showing that the board was arbitrary or capricious in its exclusion of uses.

2. Zoning—Ordinances—Zoning Ordinances—Enforcing Zoning Ordinances—Property Owners—Restrictions.

   A property owner must show that if a zoning ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted in order to sustain an attack on the zoning ordinance as confiscatory.

3. Equity—Findings of Trial Judge—Appeal and Error—De Novo Review.

   Equity cases are reviewed de novo; however, an appellate court will not ordinarily disturb the findings of a trial judge in an equity case unless, after an examination of the entire record, it concludes that it would have arrived at a different result had it been in the position of the trial judge.

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 February 5, 1975, at Lansing. (Docket No. 19621.) Decided March 25, 1975.

Complaint by Al Rossi, Chester F. Kochanski, and Mario Felice against the Township of Richfield for a declaration that a zoning ordinance is unconstitutional. Judgment for defendant. Plaintiffs appeal. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning §§ 229, 231.
[2] 58 Am Jur, Zoning § 141.
[3] 5 Am Jur 2d, Appeal and Error § 822.

*Kahn, Kollin & Mandel,* for plaintiffs.

*Morrissey, Bove & Ebbott,* for defendant.

Before: Bashara, P. J., and R. B. Burns and M. J. Kelly, JJ.

R. B. Burns, J. Plaintiffs filed a complaint in circuit court asking the court to declare the defendant's zoning ordinance unconstitutional as applied to their property. The trial court denied plaintiffs' relief. They appeal and we affirm.

Plaintiffs own approximately 132 acres in the defendant township. In their complaint they allege that they have attempted to have their property rezoned from residential-agricultural to RU-2 District, which would permit them to construct a mobile home park. They have failed in their rezoning attempt and ask the trial court to enjoin the defendant from enforcing the zoning ordinance against them.

The trial judge in a written opinion stated:

"The existence of comparable facilities, and the provision the township has made in zoning permitting mobile home parks to be located in other sections of the township, clearly indicate access has been made to other properties for this purpose.

\* \* \*

"The zoning gives every appearance of meeting the challenge for housing in this community. Single family home sites surround the subject property; surrounding property is subdivided for single homes; additional properties in the neighborhood are available for mobile home parks and are being used for that purpose.

"The traffic pattern in the use of an unpaved roadway to service hundreds of families could create a dire disaster for the community and for adjoining neighbors.

\* \* \*

"The testimony of one of the plaintiffs indicates he determines the value of the subject property for single dwellings to be approximately $1,200 an acre. This clearly indicates, with a market having been established for single homes, the plaintiffs are in a position to profit and to use their land in a manner which does not deny fair use.

"There is further proof there does not exist police or fire protection in the township to adequately service a mobile home park of the scope the plaintiffs have envisioned. The community is clearly unable to provide fire and police, and all other safety protection for such a trailer park community as well as maintaining required service for the residences earlier established within Richfield Township.

*    *    *

"The plaintiffs clearly have a valid use for their land. The land has sizable value for purposes other than mobile home parks. There is no need for additional mobile home parks in the neighborhood. Richfield Township has provided for other sites within the township for this use.

"The court can only conclude the testimony discloses the establishment of a mobile home park at the subject site would be detrimental to the public health, safety and welfare of the community and thereby determines the zoning for the subject property to be valid."

Plaintiffs claim that the zoning ordinance is invalid as it was published without the required zoning map.

The township complied with MCLA 125.279; MSA 5.2963(9) which requires the township to publish a notice in a local newspaper, giving notice that the zoning commission will have a hearing concerning rezoning of the township. The statute requires that the public be notified as to the location where the proposed ordinance and map may be viewed. The public and the plaintiffs were

informed of the proposed ordinance and given the opportunity to study the zoning map.

MCLA 125.285; MSA 5.2963(15), relied upon by the plaintiffs, applies to an emergency and interim ordinance and operates after the ordinance has been passed.

Plaintiffs claim that the defendant's ordinance prohibiting the use of their land for a mobile home park does not bear any relationship to health, safety and the general welfare and that the disparity in value of the land when zoned as residential-agriculture as opposed to its value when zoned for a mobile home park is so great as to amount to confiscation.

Chief Justice KAVANAGH in *Kropf v Sterling Heights,* 391 Mich 139, 160–161, 162–164; 215 NW2d 179 (1974), stated:

"This Court and the Supreme Court in *Euclid, supra, [Euclid Village v Ambler Realty Co,* 272 US 365; 47 S Ct 114; 71 L Ed 303; 54 ALR 1016 (1926)] has set forth several rational reasons a city may have in excluding other uses from a particular piece of property. It is presumed that the city acted for such reasons, or for any other valid reasons, in enacting a particular ordinance. To show arbitrariness and capriciousness on the part of the city, plaintiffs must show that it did not so act, or that no such grounds reasonably exist with respect to the instant parcel. In this case plaintiffs have not so shown.

"It is not for this Court to second guess the local governing bodies in the absence of a showing that that body was arbitrary or capricious in its exclusion of other uses from a single-family residential district. [pp 160–161.]

*       *       *

"Turning now to the issue upon which plaintiffs presented almost the totality of their proofs, we consider whether, in this situation, plaintiffs' property has

been so restricted as to amount to a confiscation of their property. Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted. *Brae Burn, Inc, v Bloomfield Hills, supra* [350 Mich 425; 86 NW2d 166 (1957)]; *Smith v Wood Creek Farms,* 371 Mich 127; 123 NW2d 210 (1963).

"Plaintiffs present many proofs on this issue; however, the city has presented equally forceful evidence rebutting same. Expert witnesses for both sides testified in an attempt to aid the court in reaching a correct conclusion. It is true that we hear these cases *de novo.* But in cases such as we have before us, where the evidence presented on the record could reasonably support either party, this Court feels that this writer's words in *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962) are most appropriate and should serve as a guideline for this Court and the lower courts reviewing similar cases *de novo:*

" 'This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. We do not ordinarily disturb the findings of the trial judge in an equity case, unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge.'

"In the instant case the circuit judge has assisted this Court in reaching a proper conclusion by including, in his findings of fact, his impression as to the credibility of plaintiffs' witnesses. He felt their testimony should not be afforded as much weight as that introduced on behalf of the city. Accordingly, he specifically found that the instant property was suitable for, could be developed for, and was salable when used for single family residential purposes. A review of the record *in toto* reveals that the circuit judge, acting as a trier of

fact, could reasonably have reached these conclusions. We conclude they are supported by the record. We further conclude from the record that were we the trial court we would not have reached a different conclusion."

The above statements of Chief Justice KAVANAGH apply to the present case. There was sufficient testimony in the record to sustain the trial judge.

Affirmed. Costs to defendant.