ED ZAAGMAN, INC. v CITY OF KENTWOOD

1. ZONING—MUNICIPAL ORDINANCES—PRESUMPTIONS—BURDEN OF
   PROOF—ARBITRARINESS—REASONABLENESS.

   A municipal ordinance is clothed with every presumption of
   validity, and the burden is on the party attacking a zoning
   ordinance to prove affirmatively that the ordinance is an arbi-
   trary and unreasonable restriction upon the use of his prop-
   erty.

2. ZONING—MUNICIPAL ORDINANCES—EVIDENCE—DEBATABLE QUES-
   TION—REASONABLENESS—OBJECTIVES.

   A zoning ordinance should be validated where, from the evidence
   presented, a debatable question of whether it is reasonably
   related to a valid municipal objective is raised and there is
   support for the municipality's position that it is reasonably
   based.

3. ZONING—MUNICIPAL ORDINANCES—PRESENT CONDITIONS—EXPECTA-
   TIONS.

   Zoning ordinances must be based upon present conditions as
   opposed to future expectations.

4. ZONING—MUNICIPAL ORDINANCES—VARIANCES—LEGITIMATE CON-
   CERNS—REASONABLENESS—CONSIDERATION.

   A township's concern about the problems of traffic, living-unit-
   per-acre density, and the consistency of a requested variance
   with the proposed development of the township are legitimate
   and reasonable factors which may be taken into account by the
   township in considering a request to rezone.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 6, 8] 58 Am Jur, Zoning §§ 16, 256.
[2, 3] 58 Am Jur, Zoning §§ 21, 22.
[4] 58 Am Jur, Zoning § 169 *et seq.*
[6] 58 Am Jur, Zoning § 19.
[7] 58 Am Jur, Zoning §§ 207, 212.
    Construction and application of provisions for variations in applica-
    tion of zoning regulations and special exceptions thereto. 168
    ALR 13.
[8] 58 Am Jur, Zoning §§ 26, 27.

5. ZONING—MUNICIPAL ORDINANCES—VALIDITY—CONSTITUTIONAL
    LAW—DUE PROCESS—EQUAL PROTECTION—DEPRIVATION OF
    PROPERTY—BURDEN OF PROOF—ARBITRARINESS—REASONABLE-
    NESS.

    A plaintiff who seeks to invalidate a zoning ordinance must prove
    that the ordinance specifically denies him substantive or proce-
    dural due process, equal protection of the laws, or deprives him
    of his property without just compensation; he must establish
    such abrogations clearly and conclusively and it must appear
    that the clause attacked is an arbitrary fiat, a whimsical *ipse
    dixit,* and that there is no room for a legitimate difference of
    opinion concerning its reasonableness.

6. CONSTITUTIONAL LAW—ZONING—MUNICIPAL ORDINANCES—ACTUAL
    USES—CONFISCATION— ANY PURPOSES—REASONABLENESS.

    The actual ability of a property owner to use his land as it is
    zoned is a crucial factor in determining whether a zoning
    ordinance is impermissibly confiscatory under the Fifth Amend-
    ment; to overturn the ordinance the aggrieved property owner
    must show that if the ordinance is enforced the consequent
    restrictions on his property would preclude its use for any
    purposes to which it is reasonably suited.

7. ZONING—MOST LUCRATIVE USE.

    Land need not be zoned for its most lucrative use.

8. ZONING—VARIANCES—MUNICIPAL ORDINANCES—BURDEN OF PROOF.

    A plaintiff was not entitled to a variance from a municipal zoning
    ordinance where he failed to meet his burden of proof that no
    reasonable relationship existed between the ordinance and the
    municipality's legitimate concerns for density, traffic conditions
    and fire hazards, and where he did not show that the ordinance
    did not bear a direct and substantial relationship to the preser-
    vation of public health, morals, safety, and general welfare.

Appeal from Kent, George V. Boucher, J. Sub-
mitted Division 3 April 10, 1975, at Grand Rapids.
(Docket No. 19381.) Decided June 10, 1975.

Complaint by Ed Zaagman, Inc., against the City
of Kentwood seeking an injunction to restrain the
enforcement of defendant's zoning ordinance as
applied to plaintiffs land. Judgment for plaintiff.
Defendant appeals. Reversed.

*Varnum, Ridderling, Wierengo & Christenson* (by *John F. Dewitt),* for plaintiff.

*Rhoades, McKee & Boer,* for defendant.

Before: T. M. BURNS, P. J., and MCGREGOR and D. F. WALSH, JJ.

MCGREGOR, J. This appeal is based largely on stipulated facts.

Plaintiff is a land developer who purchased 17 acres of property in the City of Kentwood, in 1972. The land was zoned R-3, which permits 1- and 2-family homes and garden apartments on platted lots if contiguous to railroads, shopping centers, or industrial zones. Plaintiff purchased the property to build single family homes under the FHA-235 program, but has since decided that the property could not be developed economically as single-family homes, duplexes or apartments.

In general, the parcel of land is bordered by an industrial park on the north, by 48th Street on the south (on the other side of which are two existing trailer parks, some single-family homes and some apartment houses), by single-family homes on the east, and by undeveloped property on the west. The City of Kentwood has four mobile home parks at present, which contain a total of 869 trailer pads.

The single most crucial issue in this appeal concerns whether the Zaagman parcel is suited for the uses specified by present zoning.

At trial, four expert witnesses testified concerning community planning and development. Mr. VanLaar, who helped plan plaintiff's park, stated that the site was suitable for a mobile home park and that the area was suited for development of other residential uses.

The second witness, Mr. Jokinen, is an urban planner on the staff of Wayne State University, and owns a mobile home park in Lansing. Mr. Jokinen testified that the best use of the land would be as a mobile home park, although the land was physically suitable for the uses permitted by the zoning ordinance.

Kentwood's mayor testified that the major reasons for the rejection of plaintiff's petition to rezone the involved parcel were traffic congestion, density of dwellings, loss of tax base, unusually high incidence of fires in mobile home parks, and the objections of local residents. The mayor testified further that R-3 zoning contemplated lots of 8,500 square feet, or about four units per acre, and that the density would be lower if the land were developed in single-family homes.

The parties agree that the planning firm of Williams & Works presented a study to the city which discussed plaintiff's proposed mobile home park at length and which made the following recommendations:

"It is recommended that this application for rezoning be denied for the following reasons:

"1) The present zoning permits the land to be utilized for a viable use—garden apartments. In this connection, if mobile home dwellers could tolerate the industrial influence to the north, other residential users should be able to do likewise.

"2) It will overtax the capacity of the Kelloggsville Public Schools serving the area * * * .

"3) It will tend to be a blighting influence on the neighborhood and, hence, have an adverse effect on property values due to:

"a) increase in peak hour traffic as Division Avenue

"b) over use of limited open space and park area

"c) concentration of high density dwelling developments in one neighborhood

"d) rapid depreciation of the mobile homes themselves

"e) impact on the mature housing to the east

"4) The mobile home park will tend to suffer a blighting effect from the industrial area to the north.

"5) No residential use of any kind is appropriate for this particular parcel from a planning viewpoint with the possible exception of housing for the aged. This would be in the form of garden apartments as permitted in the existing R-3 zoning.

"6) Once the property is rezoned to R-5, multiple family dwellings would be permitted should the owner so desire which could permit densities up to 14 units per acre based on 3,000 square feet of ground area per unit as specified in the Zoning Ordinance. In short, there is no guarantee that if zoning is granted, this particular use will be established.

"7) There are other currently planned and vacant mobile home park areas within the City of Kentwood available in the vicinity of 60th and Broadmoor and these areas will not present the same density problems as the subject area:

"a) access is direct; internal circulation problems could be minimized

"b) no contiguous industrial uses

"c) no known severe school capacity problems

"d) no probability of blighting influence.

"8) The highest and best use for the property is for nonresidential uses—possibly industrial or public."

This study was a basis for the Kentwood resolution which denied the zoning variance requested by plaintiff.

The decision of the trial court was for the plaintiff, in a very clear and concise opinion, based on *Bristow v City of Woodhaven,* 35 Mich App 205; 192 NW2d 322 (1971), and subsequent cases. In his opinion the trial judge stated:

"First, that the presumption of validity accorded by

the law to zoning ordinances does not adhere to the defendant's zoning ordinance in the situation now before the Court. [Citing *Bristow, supra.*]

"Second, that no reasonable and substantial relationship exists between the defendant's classification placed on plaintiff's property and the general public, health, safety, welfare, and morals. *Nickola v Grand Blanc Township,* 47 Mich App 684; [209 NW2d 803 (1973)]."

From the trial court's decision in favor of the plaintiff, defendant appeals as of right.

This Court is asked to determine whether the trial court committed reversible error by enjoining the enforcement of the defendant's zoning ordinance, as applied to plaintiff's proposed mobile home park.

Prior to February 19, 1974, the courts applied the "preferred use" doctrine to mobile home park cases. *Bristow v City of Woodhaven, supra.* The trial court here relied on this doctrine to come to its conclusion, even though apparently it did not agree philosophically with the doctrine. Shortly after the instant case was decided, the Michigan Supreme Court handed down its decision in *Kropf v City of Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974), which completely reversed the trend for invalidating municipal ordinances which acted to prohibit mobile home parks. The standard of review suddenly shifted back to the traditional standard employed for other types of legislation.

"[T]he ordinance comes to us clothed with every presumption of validity, *Hammond v B H Building Inspector,* 331 Mich 551 [50 NW2d 155 (1951)], and it is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property. *Janesick v City of Detroit,* 337 Mich 549 [60 NW2d 452 (1953)]." *Kropf, supra,* at 154.

In other words, the burden is not upon the defendant to establish the relationship, but upon the plaintiff to show the lack of it.

The burden devolved upon Zaagman to demonstrate that the ordinance denied him substantive or procedural due process, equal protection under the law, or deprived him of property without just compensation. Plaintiff raised none of these issues. The proofs submitted in the trial court directed themselves to the question of whether the zoning ordinance bore a reasonable relationship to the health, safety, morals and welfare of Kentwood. The trial judge made his determination based on the erroneous principle that the burden of proof was on the defendant municipality. This was incorrect, and his judgment must be reversed.

Since this is a suit in equity, the Court reviews the record on appeal *de novo.* The record does not support the trial court's second conclusion of law, "that no reasonable and substantial relationship exists between defendant's classification placed on plaintiff's property and the general public health, safety, welfare and morals". At the very least, the transcript and exhibits submitted establish a debatable question concerning this relationship.

From the evidence presented it must be absolutely clear that plaintiff should prevail. If the question is debatable, the ordinance should be validated. There are many factors which tend to support defendant's position that the zoning ordinance, as applied to plaintiff's property, is reasonably based. They are: (1) that the mobile home park will have insufficient access routes for emergency vehicles, (2) that there would be increased density and greater need for services in this section of the City of Kentwood, (3) that mobile homes are especially susceptible to fire, (4) that traffic congestion would be increased, (5) that a

mobile home park would have an adverse effect on neighboring property, and (6) there would be too little open space in the proposed narrow strip of land, as planned by plaintiff.

Any analysis of current Michigan zoning law must begin with *Kropf v City of Sterling Heights, supra.* In that case, the plaintiffs purchased a 10-acre lot which was zoned for single-family homes. The lot was surrounded by a dump, a sewage treatment plant, and by a field used to store vehicles for the municipal department of public works. Plaintiffs contended that the land had no value as zoned, and that the zoning ordinance was unreasonable as applied to the property because it was unsuitable for the uses permitted by the zoning. The trial court found that the property could be developed for single-family homes and would be salable for such purpose, although it noted that the plaintiffs would receive a higher price for the land if it were zoned for multiple-family dwellings. The trial court found that the plaintiffs had failed to establish that the ordinance was "unreasonable, arbitrary, or capricious as applied to the property in question". Thus, the ordinance was validated and enforced. In that case, the Michigan Court of Appeals reversed the trial court decision. *Kropf v City of Sterling Heights,* 41 Mich App 21; 199 NW2d 567 (1972), and the Michigan Supreme Court reversed the decision of the Court of Appeals, thus affirming the trial court. Although the Supreme Court agreed with this Court, that zoning must be based upon present conditions as opposed to future expectations the Supreme Court explicitly rejected those Court of Appeals decisions which shifted the burden to the municipality to show the reasonableness of their classifications. *Bristow v City of Woodhaven, supra, Simmons v*

*City of Royal Oak,* 38 Mich App 496; 196 NW2d 811 (1972). This "preferred use" doctrine was explicitly overruled. *Kropf v City of Sterling Heights,* 391 Mich 139, 156; 215 NW2d 179.

Since *Kropf,* there have been numerous zoning cases, including four dealing with mobile home parks, one of which is *Drettman v Macomb Township,* 53 Mich App 35; 218 NW2d 399 (1974), *lv den,* 392 Mich 775 (1974). This decision in *Drettman* holds that the plaintiff has the burden of establishing affirmatively the invalidity of the zoning ordinance. This case is factually similar to the instant case.

*Drettman* desired to build a mobile home park in close proximity to other parks in an area of diverse uses. The city refused to rezone and argued that its ordinance was reasonably related to valid municipal objectives because of traffic problems, density of residential development, and other similar facts. The trial court found these concerns valid, stating:

> "The township's concern about the problems of traffic, living-unit-per-acre density, and the apparent inconsistency of mobile home parks with the proposed development of the township were legitimate and reasonable factors taken into account by the township in denying plaintiffs' request to rezone * * * ." 53 Mich App at 43.

The quality and quantity of proof required to permit Michigan courts to invalidate zoning ordinances is explicitly set forth in *Kropf.* First, a zoning ordinance is always presumed to be valid. Further, this presumption is equally valid with respect to cases involving mobile homes, multiples, or other "preferred uses". Court of Appeals cases to the contrary notwithstanding. Secondly, for a plaintiff to prevail, he must prove that the ordi-

nance in question denied him a specific constitutional right and thus was unreasonable. He must show that the ordinance denied him "substantive or procedural due process, equal protection of the laws, or deprived [him] of [his] property without just compensation". *Kropf, supra,* at 156, 157.

Where charges are made that a constitutional restraint has been abrogated, the proof must establish such abrogation clearly and conclusively.

"[W]e require more than a debatable question. We require more than a fair difference of opinion. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness." *Kropf, supra* at 162, quoting *Brae Burn, Inc v City of Bloomfield Hills,* 350 Mich 425, 432; 86 NW2d 166 (1957).

These standards have been consistently employed by this Court in reviewing zoning cases since *Kropf,* and must be employed in the instant matter.

Plaintiff's complaint, unfortunately, does not plead facts from which its later claims of constitutional violations can be established. There are certainly sufficient facts pleaded to allow the Court to infer a claim of denial of substantive due process. There are insufficient facts, however, which go to the issue of the confiscatory nature of the ordinance.

This Court must consider whether plaintiff, on appeal, may raise a constitutional issue which he neither pleaded nor argued at trial. It is the general rule that issues may not be first raised on appeal. *Dale v Whiteman,* 388 Mich 698; 202 NW2d 797 (1972), *Hernandez v Consumers Power Co,* 51 Mich App 288; 214 NW2d 846 (1974). This

Court could legitimately ignore plaintiff's present claim of error. Defendants, however, do not request this Court to ignore the confiscation issue as being improperly raised, and we will review both claimed constitutional violations.

Plaintiff's brief asserts two constitutional bases for affirming the trial court—substantive due process and confiscation. Several points must be noted concerning the trial court's opinion. First, the trial judge used the wrong standard to determine the validity of the legislation, and stated that the presumption of validity did not apply to the ordinance. We do not agree. Secondly, while the trial judge found that the parcel was suitable for a mobile home park, he did not find the parcel unsuitable for single-family houses, duplexes, or garden apartments—all uses permitted by the R-3 zoning classification.

Two questions are raised by a substantive due process argument; first, whether a reasonable governmental interest is being advanced by the present zoning classification and, second, whether the present classification arbitrarily and capriciously excludes certain types of land uses from the area in question.

The position of the defendant is set forth in the planning memorandum prepared by Williams & Works, defendant's planning consultants. As noted in the statement of facts, the planners made the recommendation that rezoning be denied. The report opined that traffic congestion, density of habitation, and crowding in the schools made a mobile home park undesirable in that location. In addition to this report, a public meeting was held, at which the majority of the neighboring residents were opposed to the development of a new mobile home park. The Kentwood City Council passed

Resolution No. 52-73 rejecting rezoning, excerpts of which are as follows:

"1. There are presently three operating mobile home parks in the City of Kentwood * * *

"3. A proposed change of zoning would increase traffic congestion, particularly on 48th Street which is already congested * * * . The proposed park would result in the creation of two new 'T' intersections on a collector street less than 200 feet apart at line of center. * * * [N]o provision is made in the proposed plan for any alternate traffic ingress and egress other than to 48th Street which is already congested.

"4. * * * The mobile home park development plan provides a minimum useable open space as compared with the open space which would be provided if the property were developed in accordance with its present zoning classification * * * The proposed plan * * * does not provide significant useable open space * * *

"5. The present zoning classification permits the land to be used for single family dwellings for which the property is well suited.

"6. * * * [A]nd such additional density would adversely affect the public health and welfare of the people of the City of Kentwood."

This Court is hesitant to overturn the trial court's findings of fact unless convinced that a different result should have been achieved. *Kropf v City of Sterling Heights,* 391 Mich 139; 215 NW2d 179, *Land Development Corp v Township of Bloomfield,* 55 Mich App 438; 222 NW2d 768 (1974).

The problem of density was a major factor in defendant's decision not to allow rezoning, together with the fact that the subject property is located in one of the most densely developed sections in the City of Kentwood. High density results in increased pollution and crime. It is apparent

from recent aerial photographs of the area that three of Kentwood's four mobile home parks are very close to plaintiff's proposed park.

Kentwood's mayor testified that "R-3 calls for a density * * * of probably a little over 4 lots per acre". More specifically, this zoning requires that each single-family home must have a lot size of 8,500 square feet, each duplex a lot size of 13,000 square feet, and garden apartments a lot size of 3,500 square feet. It is evident that the defendant is better able to maintain a lower density if the land is developed as zoned, rather than if rezoned.

As the facts show, development of single-family or duplex homes at four per acre would provide more open space than eight trailers per acre. It is also conceivable that the traffic problems would be made more immediate if the mobile home park were built than if single-family homes were built on platted lots.

The plaintiff bears the burden of proving that a reasonable relationship does not exist between valid governmental interests and zoning, with respect to plaintiff's property. Traffic congestion is a valid governmental concern. Plaintiff did not prove that traffic congestion would not worsen if the mobile home park were built, nor did he prove that the development of the land, as zoned, would lead to traffic problems.

Since there are disputes to the effect of rezoning, and since there is evidence on both sides, *Kropf, supra,* seems to indicate that the courts must give way to the judgment of the municipality and its experts. Plaintiff has failed to bear his burden of proof in showing that the zoning ordinance, as applied to plaintiff's property, was not reasonably related to a valid municipal objective.

The second constitutional issue raised in this

appeal is the Fifth Amendment confiscation argument.

The standard to be met in such an argument is clearly set out in *Kropf, supra:*

"Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted. *Brae Burn, Inc v Bloomfield Hills, supra; Smith v Wood Creek Farms,* 371 Mich 127; 123 NW2d 210 (1963)." 391 Mich at 162–163; 215 NW2d at 189.

The trial court did not find that plaintiff's parcel was *not suited* to development of single-family homes, duplexes, or garden apartments. (Emphasis ours.) Rather, it found only that the land *was suited* to the development of a mobile home park. (Emphasis ours.) Plaintiff testified that he purchased the property specifically to build single-family homes under the FHA-235 program. One of plaintiff's expert witnesses testified that the land was suitable for such building, but that such development might not be economically sound.

From the decision in *Kropf* and subsequent decisions, it is apparent that the actual ability of a plaintiff to use his land as zoned is a crucial factor in determining whether an ordinance is confiscatory. This was especially true in *El'Chonen v Township of VanBuren,* 56 Mich App 1; 223 NW2d 335 (1974), *Land Development Corp v Township of Bloomfield, supra,* and *Tocco v Atlas Township,* 55 Mich App 160; 222 NW2d 264 (1974), where the Michigan Court of Appeals sustained lower court findings that the property in question was totally unsuitable for the zoned uses.

There is a further difficulty with plaintiff's testimony at trial. The essence of his testimony was not that the land could not be developed into single-family homes, but that it would be uneconomical to do so, that such a development would not be profitable or as profitable to plaintiff. This is not really a valid argument.

"Part of plaintiff's claim reduces itself to a contention that his property could be more profitably developed as a mobile home park than as a subdivision. That is not enough to make its current zoning for single-family residential use unconstitutional.

"The land need not be zoned for its most lucrative use. *Scholnick v Bloomfield Hills,* 350 Mich 187; 86 NW2d 324 (1957)." *Tocco v Atlas Township, supra,* at 166–167.

Lastly, the Court looks at all of the evidence, including the residential land uses already in existence in the immediate area, and finds that the evidence is unclear and that plaintiffs have failed to carry their burden of proof by proving the land unsuitable for the uses as zoned.

Plaintiff has failed to show a substantive due process violation. The trial court placed the burden of proof on the wrong party. If the burden of proof is placed upon the plaintiff, where it belongs, then it is clear that plaintiff has failed to establish that no reasonable relationship exists between the factors introduced by plaintiff, *i.e.,* density, traffic conditions, fire hazards, etc., and the zoning ordinance. Plaintiff has not shown that the ordinance does not bear a direct and substantial relationship to the preservation of public health, morals, safety, and general welfare. Under the criteria of *Kropf,* the trial court's decision is insupportable.

Reversed.